## 51274. KENNEY et al. v. PIEDMONT HOSPITAL et al.

CLARK, Judge.

This appeal in a medical professional negligence[1] action is from a judgment rendered upon a verdict for the four defendants, they being a hospital, a vascular surgeon, his employee-associate who was also a vascular surgeon, and an anesthesiologist. Plaintiffs were the patient, upon whom surgery was performed, and her husband, who sought damages for his wife's personal injuries.

In October 1970, plaintiff wife arranged with Dr. J. Harold Harrison to perform upon her an operation known as a bilateral carotid arteriogram. He disclosed the significant risks involved including the statistic that serious complications including the possibility of death occur in approximately one in a thousand operations of this type. Dr. Harrison arranged for admittance of the plaintiff to Piedmont Hospital on October 27, 1970, with the operation being scheduled for the following day. After her admission, Dr. Harrison's employee-associate, Dr. Alfredo Alarcon informed the patient that Dr. Harrison was then out of the city but was expected to return that evening or the next morning. He explained that she might either allow Dr. Alarcon to perform the operation or reschedule the procedure for a later time. She accepted Dr. Alarcon's services with the qualification that if Dr. Harrison should return to the city, the latter was to perform the operation. Dr. Alarcon also made a disclosure of the risks.

Dr. Harrison returned to Atlanta the evening before

---

[1]"Malpractice" is a misnomer which might well be discontinued because of its sinister connotation.

the operation from a vacation taken to combat fatigue and a persistent case of sinusitis. Because of this sinus condition, he was not feeling well enough the morning of the scheduled operation to undertake the task.

Dr. Alarcon proceeded to perform the operation. Complications developed during the surgery but were such that the patient was returned to the recovery room in good condition and with vital signs stable. While she was in the recovery room certain events occurred which plaintiff alleged constituted negligence on the part of Piedmont Hospital personnel. These recovery room occurrences were also the basis of claims of negligence against Dr. Alarcon and the anesthesiologist. Then, when definitive neurological signs indicative of stroke were observed, Dr. Harrison was called upon to perform emergency surgery along with Dr. Alarcon. Permanent brain damage resulted from the stroke.

Upon the trial, after both sides had completed their presentation of evidence, defendants moved for a partial verdict to be directed against the plaintiffs with respect to certain stated specifications of negligence as to each defendant. Some of these were sustained. Thereafter, in charging the jury the judge made no reference to those eliminated specifications but instructed the jury only as to the remaining negligence specifications.

The first eight enumerations attack those rulings which eliminated the negligence specifications. Two other enumerations deal with alleged errors during the trial. Another attacks a portion of the charge. The final enumeration of error asserts the court erred in overruling the plaintiffs' motion for new trial as amended.

At the conclusion of a five-day trial, the jury returned a verdict for all defendants. The appeal is from that judgment entered on that verdict and from the denial of a subsequent new trial motion. *Held:*

1. The first assignment of error attacks the direction of a verdict against the plaintiffs with respect to the specification of negligence as to defendant Dr. Harrison arising out of breach of contract. When first pleaded this specification of negligence was limited to three words: "Breach of contract." Then when amended under the caption of "Amended specifications of negligence as to Dr.

Harrison," the pertinent portion read: "As to Defendant Harrison, *breach of contract* [pleader's emphasis] in that there existed an expressed and implied contract between Dr. Harrison as physician and Mrs. Kenney as patient for the purpose of performing upon Mrs. Kenney carotid arteriograms; that Dr. Harrison breached the duty imposed upon him by law incident to and created by the contract; . . . [reciting specific facts] which acts and/or omissions constituted a deliberate breach of the duty he owed Mrs. Kenney under the physician patient contract. . ." (R. 140).

The essence of appellants' contention was that the patient had relied upon Dr. Harrison's reputation as an outstanding vascular surgeon in contracting with him to perform the operation and his failure to do so when available constituted a violation of his contractual duty which involved a non-assignable personal performance obligation.

The trial court did not err because this specification as amended was not for breach of contract but ex delicto for failure to perform an alleged contract. Here plaintiffs have not raised a question of misfeasance in the performance of a contract which would be a tort. Instead, plaintiffs asserted a failure to perform arising out of a contract, which non-feasance is not tortious.

In *Brown v. Hilton Hotels Corp.,* 133 Ga. App. 286 (211 SE2d 125) (certiorari dismissed as improvidently granted, 234 Ga. 663) our court dealt with a similar question. At page 288 of that opinion we wrote as follows: "A study of those authorities and similar cases shows that in every instance where such tort cause of action was upheld there was negligence in the performance of a duty owed either apart from the contract or arising from the contract rather than from a failure to carry out the contract itself. This is pointed out in *Mauldin v. Sheffer,* 113 Ga. App. 874, 877 (150 SE2d 150) where it is said that 'Generally, a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort. . .' In discussing the difficulty of formulating a definitive rule workable upon application to all cases, our court there concluded at p. 879 that 'one clear distinction seems to have been made which

is indicative of the scope and application of the rule, and that is the distinction between nonfeasance or the mere failure to perform the contract at all, and misfeasance or the negligent performance of the contract. [Cit.]. As to the former of these the cases have fairly consistently held that it affords no basis for an action ex delicto, even though the failure to perform may have been characterized as negligent [cits.], while in the latter a cause of action ex delicto may be had. [Cit.]' " See also the discussion and citations in *Long v. Jim Letts Oldsmobile, Inc.,* 135 Ga. App. 293, 294 (2) (217 SE2d 602).

As all of the acts and omissions contained in this specification dealt with Dr. Harrison's failure to perform the operation and did not allege any misfeasance arising out of a contract, the trial judge court did not err in his ruling that this specification was not to be considered by the jury.

2. The second enumeration attacks the court's elimination of that specification of negligence as to Dr. Harrison which charged him with abandonment of his patient. Such conduct is a tort. *Scott v. Simpson,* 46 Ga. App. 479 (167 SE 920). This specification stated "That Dr. Harrison, after being hired as Mrs. Kenney's physician abandoned her treatment without reasonable notice to her and without providing for her a competent physician in his place."

Pretermitting any reference to the ailment which Dr. Harrison testified prevented him from performing the original operation, the trial court was correct in its ruling. "The unwarranted abandonment of a case after its assumption will render a physician or surgeon liable in damages, at least where he does not give reasonable notice or provide a competent physician in his place." 70 CJS 966, Physicians and Surgeons, § 48 (f)(2). See also *Norton v. Hamilton,* 92 Ga. App. 727, 731 (89 SE2d 809).

Inasmuch as the record (T. 389-392) discloses Dr. Alarcon's extensive qualifications it is clear that Dr. Harrison provided a fully capable physician as his replacement. Accordingly, he could not be held to have committed the tort of abandonment.

3. The next three enumerations deal with the court's

elimination of three of the specifications of negligence as to Dr. Alarcon.

Enumeration number three reads as follows: "Direction of a verdict against the plaintiffs with respect to specification of negligence against Defendant Dr. Alarcon concerning his negligence in failure to give definitive instructions to the recovery room personnel. (T. 1125)."

To establish professional medical negligence the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. Code Ann. § 84-924. Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally. *Bryan v. Grace,* 63 Ga. App. 373 (1a) (11 SE2d 241); *Pilgrim v. Landham,* 63 Ga. App. 451 (11 SE2d 420); *Hayes v. Brown,* 108 Ga. App. 360 (133 SE2d 102). There is a presumption that medical or surgical services were performed in an ordinary skillful manner and the burden is on the plaintiff to show failure to exercise due care and skill. *Shea v. Phillips,* 213 Ga. 269, 271 (2) (98 SE2d 552); *Wilson v. Kornegay,* 108 Ga. App. 318 (132 SE2d 791). Excepting in a few extreme circumstances, the question of compliance with the required standards must be presented through expert testimony. *Shea v. Phillips,* supra; *Ga. Osteopathic Hospital, Inc. v. Davidson,* 121 Ga. App. 371 (173 SE2d 734); *Truluck v. Funderburk,* 119 Ga. App. 734 (168 SE2d 657). As was said in *Mayo v. McClung,* 83 Ga. App. 548, 556 (2a) (64 SE2d 330): "It was not a question of what one individual doctor thought was advisable."

Measuring the medical testimony presented for plaintiffs as to this point, it appears that their doctors presented their individual views and their individual practices. Thus there was no valid legal evidence to contradict that presented for the defendants as to the degree of care and skill exercised by the medical community generally.

The two remaining enumerations assert error in refusing to submit to the jury the contentions that Dr. Alarcon was negligent "in abandoning Mrs. Kenney and leaving the hospital when he knew she was in a dangerous

condition" and that "his failure to undertake remedial action after it was discovered Mrs. Kenney was showing signs of stroke." Whether or not there is merit to these two assignments is dependent upon the evidence. Our reading of the trial transcript of 1,469 pages has led us to the conclusion that the trial court did not err in its decision to remove these two contentions from consideration by the jury. Illustrative of the absence of evidence necessary to show negligence in delaying the emergency surgery upon discovery of the stroke was the testimony that "it's the type surgery that you have to have two qualified surgeons to accomplish the operation." (T. 453). Thus the required medical action had to await the arrival of the second vascular surgeon.

4. We deal next with Enumerations 5 and 6 concerning the elimination of some of the negligence specifications applicable to the anesthesiologist. As to the alleged failure to give definitive instructions, the ruling made in the previous division of this opinion as to Dr. Alarcon would apply. The other specification was abandonment but there is an absence of proof as to the medical standard necessary to create an issue of fact. See Code Ann. § 81A-150 (a).

5. The seventh enumeration deals with the elimination of that specification of negligence against Piedmont Hospital which charged its employees with "failing to promptly summon medical assistance after discovering signs and symptoms in Mrs. Kenney indicative of a need for such medical assistance." The trial transcript fails to support such assertion. Accordingly, the trial court was correct in eliminating specification No. 4 (b).

6. The eighth enumeration avers error "in allowing counsel for the defendants to read into evidence part of Mrs. Kenney's deposition and then refusing to allow counsel for the plaintiffs to read other parts of the same deposition." In support of this assertion appellants cite Code Ann. § 81A-132 (a). Appellants obviously refer to subparagraph 5 of that section which reads in part as follows: "If only a part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced. . ." In the

instant situation the portion that plaintiff sought to introduce was not relevant to that which had been introduced dealing with a prior inconsistent statement by Dr. Alarcon. When denying introduction of the proffered testimony, the court stated: "I think what you are trying to offer is what Dr. Harrison said. What he [defense counsel] put in is what Dr. Alarcon said and I don't believe one has any connection with the other." (T. 1071). In view of the lack of relevancy, this ruling was correct.

7. The next enumeration of error involves a brouhaha which developed during the trial when defense counsel placed upon the witness stand the nurse who had been in charge of the recovery room at the Piedmont Hospital but was no longer employed there. Plaintiffs' counsel objected that her testimony should not be permitted because she had been in the courtroom during the trial after the sequestration rule had been invoked. Defendants' counsel rebutted that she was competent to testify because he had selected her to remain in the courtroom as the representative of the defendant hospital. The trial court expressed reluctance to permit her to testify but finally consented to do so providing the three doctor defendants, who had not yet testified, would be required to leave the courtroom during her testimony.

This was a decision in the trial court's discretion. See annotations under Code Ann. § 38-1703 entitled "Discretion of court" at pages 480, 481 and 482 of Book 13A. We find no abuse of discretion.

Additionally, it must be noted that the nurse's testimony did not echo or parrot any of the evidence that had preceded her appearance on the stand. Both the court and counsel had feared this would occur. Therefore, we cannot hold this ruling to require a new trial. "Injury as well as error must affirmatively appear to obtain a reversal." *Barnes v. Cornett,* 134 Ga. App. 120, 122 (5) (213 SE2d 703).

8. The eleventh enumeration of error urges that "The court erred in its charge to the jury with respect to the Doctrine of Informed Consent in that the charges he gave with respect to the above-said Doctrine were not in conformity with the law." (T. 1153).

Until 1971 there was some question as to whether the "Informed Consent Doctrine" was applicable to our state. See *Mull v. Emory University, Inc.,* 114 Ga. App. 63, 65 (5) (150 SE2d 276). That year the General Assembly enacted the Georgia Medical Consent Law (Ga. L. 1971, pp. 438, 441) adding Chapter 88-29 to the Code. In that statute the legislature declared in § 88-2906 the following: "A consent to medical and surgical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms hereof, shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same." (Ga. L. 1971, pp. 438, 440).

In *Young v. Yarn,* 136 Ga. App. 737, we derived from that statutory directive the following conclusion: "The legislature has defined the physician's duty of disclosure to his patient; the physician must inform the patient of the general terms of treatment in order to effect a valid consent. In that we have decided that this duty does not include a disclosure of 'risks of treatment,' appellant cannot sustain an action alleging that defendant breached his duty in failing to warn of the risks of treatment or that her consent was thereby rendered invalid."

Our examination of the court's instructions given to the jury discloses no error.

9. The decision in this case depended ultimately upon the evaluation of expert medical opinions. This was a matter for determination by the jury and not by the court as a matter of law. *Williams v. Melton,* 120 Ga. App. 466 (171 SE2d 318). The jury's decision was adverse to the plaintiffs. Accordingly, the trial court did not err in denying the amended motion for new trial.

*Judgment affirmed. Pannell, P. J., and Quillian, J., concur.*

Argued October 9, 1975 — Decided November 20, 1975.

*William T. Elsey,* for appellants.
*T. M. Smith, Jr., Hunter S. Allen, Jr., Robert G. Tanner,* for appellees.