### 58305. SLACK et al. v. MOORHEAD et al.

BIRDSONG, Judge.

Medical malpractice. Mrs. Louise Slack and her husband brought separate suits against Dr. Moorhead and one of the agencies of the Fulton-DeKalb Hospital Authority. The trial court granted a directed verdict in behalf of the hospital as to each count in Mrs. Slack's suit, one count asserting negligence and a second count asserting tortious battery. The court granted a directed verdict in favor of Dr. Moorhead as to the count of negligence. The jury returned a verdict in favor of Dr. Moorhead as to the count of tortious battery. Though the style of the case indicates that the appeal is as to both defendants below, the Slacks bring this combined appeal against Dr. Moorhead only in regard to the grant of directed verdict on the issue of negligence. They expressly abandon all the other issues raised in their motions for new trial; the judgment of the court as to the defendant Hughes Spalding Pavilion is therefore final. The sole enumeration of error is the grant of directed verdict on the count involving negligence in favor of Dr. Moorhead. *Held:*

The facts show that in March, 1972, Mrs. Slack was examined by Dr. Moorhead. The examination disclosed that Mrs. Slack had a lump on one of her breasts. She also indicated to Dr. Moorhead some concern that she had not been able to achieve a successful pregnancy. Her history reflected that in 1959 she had undergone a D & C (dilation and curettage) and again in 1971. She also indicated that

in the past she had experienced vaginal bleeding. Physical examination showed that there was a mass in the abdominal area which was sensitive to pressure. Also Dr. Moorhead found several fibroid growths, characterized as myomas. Surgical procedures were tentatively scheduled for the removal of the breast mass and evidence was presented by Dr. Moorhead that Mrs. Slack was advised that exploratory surgery would be necessary to determine the true state of the abdominal region. Mrs. Slack denied this discussion concerning the laparotomy (or abdominal surgery). Mrs. Slack returned home and did not return to Dr. Moorhead until eight months later. She was worried about the renewed growth of the lump in her breast. At that time (November, 1972), Mrs. Slack signed a consent form authorizing the removal of the growth in her breast and a laparotomy with permission to perform a hysterectomy if that procedure was deemed necessary by Dr. Moorhead. Mrs. Slack was admitted to the hospital on Sunday and was examined by a resident who found the presence of the growth in the breast and confirmed the earlier findings by Dr. Moorhead as to the condition of the abdominal area. On Monday morning, Mrs. Slack was operated upon and the growth in her breast successfully excised. Upon performing the laparotomy, Dr. Moorhead concluded that because of the several growths in and about the uterus with possible obstruction of the ureter and consequent possible danger to the urinary system and particularly the kidney; together with a chronic pelvic inflamatory disease containing numerous fluid filled cysts, a hysterectomy was necessary. It was only upon returning to consciousness from the operation that Mrs. Slack contended that she first became aware that abdominal surgery had been performed. She contended that she had not consented to such a procedure. The basis of her suit (her husband's suit was based upon loss of consortium and reasonable expenses) was that Dr. Moorhead had been negligent in not examining her again between March and November to determine if her condition had improved or deteriorated prior to performing the laparotomy and hysterectomy, that her actual condition did not warrant abdominal surgery, as well as complaining that she had

not consented to the abdominal surgery and therefore that procedure constituted a tortious battery upon her person. The latter issue was resolved against Mrs. Slack when the jury found that she had voluntarily signed a consent to both the breast and abdominal surgery. In regard to the examination, the evidence was uncontested that Mrs. Slack was given an examination the day before the surgery, that that examination confirmed the findings of Dr. Moorhead on the previous March and that the results of that examination were known to and considered by Dr. Moorhead prior to the surgery.

The principal thrust of Mrs. Slack's complaint was that a pathology report indicated that the largest myoma that was removed from the uterus was only 3 cm. in size (about the size of a quarter). All the medical witnesses agreed that a myoma of that size was considered small. It further was established that at the time of her examination in March and apparently again in November, Mrs. Slack was not experiencing uterine bleeding, was not experiencing discomfort, had a negative PAP smear, and apparently was asymptomatic. Mrs. Slack called as an expert witness a doctor who had never examined Mrs. Slack. Based upon the hypothetical question that a patient who is experiencing no symptoms, i.e., no uterine bleeding, no complaint of pain, a PAP smear that is negative, and a positive diagnosis of a small uterine myoma, where the myoma was as small as the one found, the doctor stated *he* would keep the myoma under observation and not resort to surgical excision. That same witness expressed difficulty in believing such a simple case would come to the attention of a doctor, or that a patient would show no other physical symptoms, but assuming no facts other than those posed in the hypothetical patient, the doctor expressed the opinion that he would watch the patient and not relieve the problem by surgical removal. At no time did the medical expert state what was the usual and accepted procedure in the medical profession for a patient who has previously undergone two D&Cs, was afflicted with a large number of matted fibroid masses (myomas) throughout the walls of uterus, a chronic pelvic inflammatory disease with numerous fluid filled cysts, and where there was

presented cause for particular concern because. of one myoma located on the upper left aspect of the uterus that presented an apparent real danger to blockage to the ureter as it entered the bladder with concomitant danger to the entire urinary system and the kidney.

The law of this state requires the courts of this state to presume that a physician exercises his skills in the medical and surgical field in a skillful manner. *Shea v. Phillips,* 213 Ga. 269, 271 (2) (98 SE2d 552). The burden is on the one who denies it to show a lack of due care, skill, and diligence. *Akridge v. Noble;* 114 Ga. 949, 958-960 (41 SE 78); *Fincher v. Davis,* 27 Ga. App. 494 (2) (108 SE 905). In such a case the proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses *(Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45)), and this standard should be that exercised by the medical community generally, not what a particular doctor would do in the circumstances. *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 664 (222 SE2d 162).

In this case, appellant .presented no evidence as to what was the reasonable standard of medical care to be exercised upon a patient exhibiting the physical conditions shown by Mrs. Slack, other than certain opinions given by an expert called by Mrs. Slack that under certain limited circumstances, the doctor, as an individual, would not have operated. At the same time, the same witness refused to extend that opinion to Mrs. Slack stating that his opinion was limited to a hypothetical situation and could not be extended to actual cases. Nor did Mrs. Slack offer any expert testimony that the procedures, including the examination by a hospital resident on the evening before the operation in question, was in any way contrary to accepted medical practice. Thus we are faced with the unrebutted presumption that Dr. Moorhead performed his medical and surgical services in a professional and acceptable manner.

A directed verdict is authorized where there is no conflict in the evidence and the verdict is demanded. *State Farm &c. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878). The mere existence of conflicts in the evidence does not render the direction of a verdict erroneous if it was

demanded either from proof or lack of proof on the controlling issue. *Stepp v. Stepp,* 195 Ga. 595 (2) (25 SE2d 6); *Lingo v. Kirby,* 142 Ga. App. 278, 279 (236 SE2d 26). That is the situation in the present case. Appellant having failed to prove that the operation and the preceding examination was not done in accordance with established medical procedure, the presumption prevails. In such circumstances, it was not error for the trial court to direct a verdict on the issue of negligence as to the appellee.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED SEPTEMBER 10, 1979 — DECIDED OCTOBER 12, 1979 — REHEARING DENIED OCTOBER 26, 1979.

*Phillip Slotin,* for appellants.
*Robert G. Tanner, Jack Spalding Schroder, Jr., Judson Graves,* for appellees.