Annelle B. DAVIDSON, Wife, and J. T. Davidson, Jr., Husband, Plaintiffs-Appellants,

v.

William C. SHIRLEY, M. D., et al., Defendants-Appellees.

No. 78–2802.

United States Court of Appeals, Fifth Circuit.

May 2, 1980.

---

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

INGRAHAM, Circuit Judge:

The appeal in this diversity case emerges from a controversy over whether the defendants were authorized to perform an abdominal hysterectomy, the removing of the uterus, on the person of plaintiff Mrs. Davidson. No question of negligence having been raised, the district court treated the matter as one of battery with the defense of consent, and, finding no disputed issue of fact, granted the defendants' motion for summary judgment based on the surgery authorization form executed by Mrs. Davidson. For the reasons set out below, we agree with the district court and affirm its judgment.

In 1975, the plaintiffs, Annelle B. and J. T. Davidson, Jr., were expecting the birth of their second child. On advice from friends, they secured the services of the defendant medical partnership to deliver their baby. Defendant Dr. William C. Shirley conducted routine examinations of Mrs. Davidson and during the latter stages of her pregnancy he advised that the baby be delivered by caesarean section because of the baby's size and position within her womb. The Davidsons discussed this suggestion and agreed to the procedure; they also requested that a tubal ligation be performed during the delivery for the purpose of rendering Mrs. Davidson completely sterile.

When Mrs. Davidson was admitted to the hospital on September 16, 1975, she signed a consent form authorizing the medical partnership to perform the caesarean section and tubal ligation and also authorizing "such additional operations or procedures as are considered therapeutically necessary on the basis of findings during the course of said operation." Mrs. Davidson, a registered nurse familiar with these forms, testified unqualifiedly in her deposition that she read and understood this language.[1]

William A. Wehunt, Atlanta, Ga., for plaintiffs-appellants.

Jones, Cork, Miller & Benton, E. Bruce Benton, Macon, Ga., for William C. Shirley, et al.

---

1. In addition, the Davidsons both executed a "Permit for Sterilization" which gave defendants and the Coliseum Park Hospital and its medical staff permission to sterilize her, as well

On the next day, September 17, 1975, Mrs. Davidson was given a general anesthesia and remained asleep during the course of her operation. Drs. Shirley and Browne delivered a healthy, normal child through a vertical incision of the uterus. The placenta was removed after the child. The uterus is interlaced with many veins and arteries which supply life support and fluids to the placenta during pregnancy. Consequently, as is normal in caesarean operations, Mrs. Davidson's uterus was bleeding both at the incision and within the uterus where blood vessels had previously attached to the placenta. To minimize blood loss the doctors quickly sutured the incision. Thereafter, under normal circumstances, blood flow would gradually be stemmed by the contraction of the uterus. However, because of Mrs. Davidson's older age, thirty-six, the large size of the child, and the presence of numerous small fibroid tumors throughout her uterus, Mrs. Davidson's uterus was contracting at a slower than normal rate and she was losing more than a normal amount of blood.

At this point in the operation Mrs. Davidson's condition was reasonably stable and the doctors turned to other matters. They discovered a grapefruit-sized tumor covering her right ovary and adhered to the uterus. Without laboratory study they could not determine whether the growth was benign or malignant. The doctors, without attempting to contact Mr. Davidson, removed the tumor and sent it to the laboratory for analysis, where subsequent tests revealed that the growth was benign.

Unfortunately for Mrs. Davidson, the removal of the tumor necessitated the severance of more blood vessels in the uterus, such procedure resulting in heavy blood loss from the point where the tumor had previously adhered to the uterus. The combined blood loss from this point of removal, from

the caesarean incision, and from inside the uterus was too heavy. In their attempts to control the bleeding, Drs. Shirley and Browne utilized two methods; suturing and packing the afflicted areas, and introducing an oxytocin drug known as Pitocin, a drug used often to control bleeding during surgery. Both methods were unsuccessful and Mrs. Davidson's condition was deteriorating to the point where the doctors feared that this continuous uncontrolled bleeding might endanger her life. After a quick consultation with Dr. Roddenberry, a member of the defendant medical partnership, Drs. Shirley and Browne removed Mrs. Davidson's uterus in order to halt the flow of blood, the uterus being the primary source of the uncontrolled bleeding. Mr. Davidson learned of his wife's condition from Dr. Roddenberry prior to the removal of the uterus; however, he was told that a hysterectomy was necessary and he was not asked for his consent.

The net result was that Mrs. Davidson received a hysterectomy with removal of her right ovary and Fallopian tube instead of her requested tubal ligation. Having very strong feelings against the removal of her organs, as opposed merely to being rendered sterile, Mrs. Davidson, joined by her husband, brought this action against Drs. Shirley and Browne and against their medical partnership, seeking damages for negligence, assault and battery, and conversion.[2]

The parties conducted extensive discovery including interrogatories, affidavits, exhibits and depositions. A total of seven were deposed, including plaintiffs, defendants, and one Dr. Charles Butler, plaintiffs' expert medical witness. Defendants thereafter moved for summary judgment. The district court found that there was no issue of negligence in the performance of the surgery and thus treated the claim as one of

as "perform any operation they deem advisable . . . ." Plaintiffs also jointly executed a statement to Dr. Shirley requesting and consenting to the sterilization, and recognizing that there was no guarantee of effectiveness.

2. Although all parties were citizens of Georgia at the time of the operation, Mrs. Davidson and her husband subsequently moved to Charleston, South Carolina. Thus, there existed the requisite diversity of citizenship necessary to invoke the jurisdiction of the federal district court.

battery with the defense of consent.[3] Finding no factual dispute, the district court found the consent valid and granted defendants' motion.

Plaintiffs appeal, challenging the district court ruling in several respects; however, the underlying question for review is whether the district court erred in granting summary judgment. More specifically, as plaintiffs' counsel agreed at oral argument, the case turns on the consent form. In view of Mrs. Davidson's deposition testimony that she read and understood the form, the question thus becomes: Was there any issue of fact as to whether the doctors' actions were therapeutically necessary? Viewing all of the inferences from the underlying facts contained in the depositions and exhibits in the light most favorable to the plaintiffs, we conclude that the district court did not err in granting summary judgment to the defendants.

█ Plaintiffs argue that a finding that the hysterectomy was therapeutically necessary requires a finding that the hysterectomy was a life-saving measure in fact. This contention is contradicted by the record. Mrs. Davidson admitted in her deposition that the removal of the tumor was therapeutically necessary; that she would consent to that procedure because it was a hazard to her health. The tumor was benign and thus not a threat to her life. Plaintiffs' argument is without merit. Plaintiffs also argue, with no case authority, that the defendant doctors are insurors of the necessity of the treatment, i. e., an after the fact determination that the procedure was unnecessary would automatically render the doctors liable. We have found no Georgia cases confirming such a standard. Moreover, we think the Georgia standard determining whether a procedure was "therapeutically necessary" is whether the doctor exercised that degree of care, skill and diligence which any other surgeon in the community would be required to employ in reaching a decision under the same or similar circumstances, in other words, the reasonable belief standard. See Ga.Code Ann. § 84–924, construed in Kenney v. Piedmont Hospital, 136 Ga.App. 660, 662–64, 222 S.E.2d 162, 166–67 (1975); Hayes v. Brown, 108 Ga.App. 360, 362–63, 133 S.E.2d 103, 104–05 (1973). If a differing standard of liability is desired, then the decision is for the Georgia Legislature and not the federal judiciary.

█ We now turn to the evidence in the record to see whether there is a genuine issue of material fact, i. e., a genuine dispute as to whether Dr. Shirley was reasonable in concluding that the hysterectomy was therapeutically necessary. It cannot seriously be disputed that Mrs. Davidson was bleeding heavily and the doctors were unsuccessful in their initial efforts to halt it by using sutures and oxytocins. All doctors who testified in depositions agreed on this point. Significantly, plaintiffs' own expert, Dr. Charles Butler, when asked if he would have considered performing a hysterectomy under these same circumstances, stated unequivocally that once the sutures and oxytocins failed, a hysterectomy was absolutely the next indicated step. Deposition of Dr. Charles Butler, at 65–66.

It must also be remembered that the time element was critical. Dr. Rozier testified that the patient's marked change in blood pressure and pulse rate, as evidenced by the anesthesia charts kept on Mrs. Davidson's vital signs, indicated the classic case of such changes secondary to extensive bleeding. Deposition of Dr. David Rozier, at 25–26. The doctors were here faced with a patient who had experienced a total blood loss of 1000cc. in a very short period of time.

Dr. Butler's testimony was supportive of defendants' position in every material respect. Although he first stated that he personally might not have performed a hysterectomy, he clearly pointed out that most surgeons would have done as the defendants did. Moreover, as noted above, as soon as he learned of the other two unsuccessful

---

**3.** The district court did not resolve the conversion claim; however, the hospital consent form authorized the hospital to dispose in accordance with its customary practice any tissues or parts surgically removed. Moreover, the point is not here pressed on appeal.

techniques, he agreed that a hysterectomy would have been necessary to halt the flow of blood. His testimony unequivocally supported a conclusive finding that Dr. Shirley acted reasonably in determining that removing Mrs. Davidson's uterus was therapeutically necessary. He was the sole medical expert on whom plaintiffs relied and his testimony created no dispute in the above facts or findings.

Plaintiffs have argued numerous matters regarding Mrs. Davidson's deep-seated feelings about hysterectomies,[4] her emotional condition as a result thereof, and the permanency of what has happened. While we do not wish to appear unsympathetic, these are properly matters involving damages and are not relevant in deciding whether a therapeutic necessity existed.

Mindful as we are of the movant's heavy burden on appeal from the grant of summary judgment in his favor, we cannot say that the district court erred in granting defendants' motion for summary judgment. For it is now clear in Georgia that "where the plaintiff must produce an expert's opinion in order to prevail at trial, when the defendant produces an expert's opinion in his favor on motion for summary judgment and the plaintiff fails to produce a contrary expert opinion . . . to that motion, then there is no genuine issue to be tried by the jury and it is not error to grant summary judgment to the defendant." *Watson v. Worthy*, 151 Ga.App. 131, 132, 259 S.E.2d 138, 139 (1979) (quoting *Howard v. Walker*, 242 Ga. 406, 408, 249 S.E.2d 45, 46–47 (1978) (per curiam)).

As a practical matter, plaintiffs' expert witness testified favorably for the defendants and plaintiffs did not offer the contrary opinion necessary to raise a genuine fact issue. Accordingly, based on the validity of the consent form executed by Mrs. Davidson, summary judgment was proper and the judgment is therefore

AFFIRMED.

4. It is undisputed that Mrs. Davidson never told Dr. Shirley or the other doctors of her

feelings about hysterectomies *prior* to the operation.