## 59919. SKINNER v. COLEMAN-NINCIC UROLOGY CLINIC, P. A. et al.

SMITH, Judge.

On October 26, 1975, Franklin Skinner had an operation for removal of a kidney stone located in his left ureter. The operation was performed at Doctors Memorial Hospital by Drs. Coleman and Nincic of the Coleman-Nincic Urology Clinic, P.A. A No. 8 polyethylene catheter was placed in the ureter during the operation to aid healing. Subsequent to the operation, appellant experienced considerable pain and discomfort in the lower abdominal region. On November 25, 1975, an x-ray was taken, revealing that the catheter had migrated into the bladder, where it became twisted and tangled. After an unsuccessful attempt to remove the catheter under local anesthesia, it was removed surgically. Appellant filed a malpractice action, alleging that appellee doctors were negligent in failing to use a catheter that would not migrate. In addition, appellant alleged that appellee doctors were negligent in the post-operative care they provided. It was charged that appellees failed to inform appellant that the catheter had been left inside of him and failed to properly monitor its location. Appellees filed a motion for summary judgment. The trial court granted the motion. We affirm in part and reverse in part.

1. In *Howard v. Walker,* 242 Ga. 406 (249 SE2d 45) (1978), the Georgia Supreme Court held "that in those cases where the plaintiff must produce an expert's opinion in order to prevail at trial [which is typically the case in malpractice actions (*Berman v. Rubin,* 138 Ga. App. 849, 853 (227 SE2d 802) (1976))] an expert's opinion in [the defendant's] favor on motion for summary judgment" will pierce the plaintiff's pleadings. See *McCracken v. Gainesville Tribune, Inc.,* 146 Ga. App. 274, 277 (246 SE2d 360) (1978). Where the defendant produces an expert in his favor and the plaintiff fails to respond with a "contrary expert opinion," summary judgment in favor of the defendant is appropriate.

While the theoretical underpinnings of *Howard* are rather unclear,[1] *Howard* is the law and is applicable to the instant case. However, the following rule is also applicable: "On a motion for

---

[1] It is most difficult to reconcile the Supreme Court's ruling in *Howard* with the

summary judgment, the burden is on the movant to produce evidence which eliminates all of the material factual issues in the case, even those which the opposing party would have the burden of proving at trial . . . Once the movant eliminates all issues, the burden *then* shifts to the opposing party to show the existence of issues of fact for the jury. See *Stephens County v. Gaines,* 128 Ga. App. 661 (197 SE2d 424) (1973)." *Harris v. White,* 148 Ga. App. 862, 863 (253 SE2d 249) (1978). While the expert opinions presented by appellees in this case establish the absence of negligence with respect to the selection and placement of the catheter, they do not pierce appellant's pleadings with respect to all acts of negligence alleged in the complaint. Under these circumstances, summary judgment was inappropriate.

Specifically, an issue of fact remains as to whether appellee Coleman was negligent in his treatment of appellant on November 25, 1975. At that time, appellee Coleman allegedly attempted to

---

well-established rule that an expert opinion "is [not] so authoritative that the Jury are bound to be governed by it." *Choice v. State,* 31 Ga. 424, 425 (1860). If expert opinion testimony "is not conclusive or controlling and is submitted for whatever the jury considers it to be worth" (*Woods v. Andersen,* 145 Ga. App. 492, 494 (243 SE2d 748) (1978)), then it is questionable whether such testimony is sufficient to "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CPA § 56 (c) (Code Ann. § 81A-156 (c)) Why is a trial court bound by such testimony if a jury is not? See *Ginn v. Morgan,* 225 Ga. 192 (2) (167 SE2d 393) (1969).

Perhaps there is an implicit holding in *Howard* that unimpeached, uncontroverted expert opinion testimony produced in cases "where the plaintiff must produce an expert's opinion in order to prevail at trial" stands generally on the same footing as unimpeached, uncontroverted factual testimony and "cannot be arbitrarily disregarded by the trier of fact . . ." *Nesbit v. Nesbit,* 241 Ga. 351, 352 (245 SE2d 303) (1978).

There is authority for such a position. In cases where the plaintiff must produce an expert's opinion in order to prevail at trial (e.g., a medical malpractice case), the issue under consideration (i.e., a physician's negligence) is solely within the knowledge of experts. As stated in *Truelove v. Hulette,* 103 Ga. App. 641, 645 (120 SE2d 342) (1961): ". . . [W]hen the subject under consideration is one solely within the knowledge of experts . . . expert testimony, of necessity, must be believed, if uncontradicted." If an uncontroverted expert opinion would be binding at trial, it could form the basis for the grant of summary judgment.

However, the majority in *Howard* at p. 408 appears to reject this analysis. The majority opinion concludes: "*Ginn v. Morgan,* supra, and its progeny continue to be correct insofar as nonexpert opinion cases are concerned and *insofar as motions for summary judgment in favor of plaintiffs are concerned.*" (Emphasis supplied.) Under an evidentiary rule whereby uncontroverted expert opinion testimony cannot be disregarded by a jury (or a judge), no rational distinction can be drawn, as the Supreme Court draws, between a plaintiff's and a defendant's expert witness. Thus, it would appear that *Howard v. Walker,* supra, is based upon a more elusive rationale.

remove the catheter by yanking it out. This procedure caused appellant excruciating pain. Appellant began "bleeding everywhere" and "ruined his pants." Appellees cite no medical testimony establishing that the November 25 procedure was proper. Thus, the burden had not shifted to appellant to produce a "contrary expert opinion."

In addition, an issue of fact remains as to whether appellee doctors were negligent in failing to properly monitor the location of the catheter and in failing to remove it until November 25, a month after surgery. Appellant contends these omissions contributed to the migration of the catheter into the bladder. He asserts that, if appellees had properly checked on the position of the tube and removed it earlier, he would not have been subjected to the intense pain and suffering that he experienced.

Appellees have not pierced appellant's pleadings insofar as this theory of recovery is concerned. Although appellee Coleman testified that, in his opinion, the catheter remained in appellant "long enough," no medical testimony has been presented establishing that appellee-doctors' post-operative treatment of appellant was in compliance with the "standard [that] should be . . . exercised by the medical community generally." *Slack v. Moorhead,* 152 Ga. App. 68, 71 (262 SE2d 186) (1979).

2. The physicians in this case determined the operating procedure, selected the catheter used in the operation, and were solely responsible for appellant's post-operative care. Under these circumstances, there is no claim against appellee Doctors Memorial Hospital (see *Minter v. Powell,* 152 Ga. App. 449, 451 (263 SE2d 235) (1979)), and the trial court did not err in granting summary judgment in its favor.

3. Appellant's remaining contentions are without merit and require no discussion.

*Judgment affirmed in part; reversed in part. Deen, C. J., Quillian, P. J., Shulman, Banke and Carley, JJ., concur. McMurray, P. J., Birdsong and Sognier, JJ., dissent.*

ARGUED MAY 8, 1980 — DECIDED
DECEMBER 2, 1980.

*Robert P. Hoyt, J. C. Rary,* for appellant.
*Robert G. Tanner,* for appellees.

McMURRAY, Presiding Judge, dissenting in part.
On October 26, 1975, Franklin Skinner was operated on for the

removal of a kidney stone in his left ureter connecting his left kidney with his bladder. A No. 8 polyethylene splinting tube was placed in the ureter during the operation performed by Drs. Coleman and Nincic of the Coleman-Nincic Urology Clinic, P.A. The splinting tube became dislodged and ended up in his bladder before it could be removed. On or about November 25, 1975, after the tube was discovered by X-rays as kinked and curled up, that is, coiled and bunched and tangled up inside Mr. Skinner's bladder, it was removed after considerable pain and discomfort and another operation using general anesthesia.

Skinner contends that he was not told after the operation by the doctors that a tube had been left in him or that it was supposed to be left in him and not even after his second postoperative visit in which he began having pain in the area of his bladder, having some difficulty in urination and reddish little particles in his urine. He further contends that not until his third visit was any mention made of the presence of the catheter tube which had been dislodged from the ureter and was kinked and curled up in his bladder. At this time he was told there was a tube in him, and that it had been left in him.

The doctors contend that the operation upon his left lower ureter was necessary to remove kidney stones found embedded therein. The stones were removed, and they chose to insert a plastic tube (a No. 8 polyethylene) into the ureter to facilitate healing of the inner walls of it; that is, to prevent the formation of a stricture, a serious complication which can damage the ureter and lead to the loss of the kidney. They contend that the use of this tube is a standard technique frequently employed by urologists. The removal of this tube is accomplished at a later date by simply inserting a special instrument called a cystoscope through the bladder into the ureter, grasping the tube with the instrument and then withdrawing it. The tube, of course, is intended to be withdrawn at a later date although the tube may migrate down through the bladder. This occasional migration had never been a problem.

The hospital did not tell Mr. Skinner anything about the presence of the No. 8 tube when he was discharged but contends this is generally done by the doctor.

Dr. Nincic, the assistant in the operation, contends that he did not tell the patient about the tube as this was up to Dr. Coleman who performed the operation. Dr. Coleman does not agree that he did not tell the patient about the tube. Rather, he stated that he could not specifically remember telling the patient of the tube but that he felt sure that he did so in the course of the routine explanation he recalled giving the patient, nor did he recall ever having forgotten to converse with the patient concerning the tube.

After the tube was removed, Mr. Skinner contacted several other doctors and eventually employed counsel who brought this action for medical malpractice against Doctors Memorial Hospital, Coleman-Nincic Urology Clinic, P.A., and Drs. Coleman and Nincic, as well as Jane Doe and Richard Roe, employees of Doctors Memorial Hospital. In this suit plaintiff alleges that the defendants failed to use the proper tube for insertion in his body, that is, one designed to prevent its migration from one part of his urinary tract to another, the tube being supplied by the hospital and the doctors by selection and insertion of the catheter. Plaintiff also alleges the defendant doctors breached their contractual duty to him to exercise the latest medical skill and learning on plaintiff's behalf to spare the plaintiff from unnecessary postoperative complications. He alleges further that the tube was left in his urinary tract for a month without telling him to restrict his activities and without constantly checking on the position of the tube; that they forgot to remove the tube, forgot the tube was there, and did not advise plaintiff until after the November 25, 1975, X-ray revealed its presence that it had to be removed. He further alleges that the defendants did not tell plaintiff the tube they proposed to move was knotted and twisted and impossible to remove in their office but instead they committed him to great pain and extreme mental distress by seeking to yank the tangled tube from out of his bladder from the outside, requiring same to finally be removed in the hospital under general anesthesia by cutting it into pieces.

In addition to the breach of contract to properly care for him, plaintiff alleges that the above circumstances constituted gross negligence and dereliction of personal duty, causing him to become obligated for extensive further medical care and treatment, loss of time from his job, and to suffer great pain from the obstruction of the urinary tract.

Two additional claims were also contained in the petition, that is, for the foregoing battery sustained by the plaintiff and fraud in the deliberate concealment of the tube within him, causing him to suffer the injuries set forth above.

Plaintiff sought damages for $2,000 medical, hospital and nursing expenses; $6,200 for loss of earnings occasioned by the actions of defendants; and judgment in excess of $10,000 or in such amount as an enlightened conscience of the jury should determine to fully compensate him for the past physical pain and for the mental distress resulting from the defendants' negligence, battery and fraud claims only, and such amount as exemplary damages as will adequately make an example of these defendants and deter them from future similar reckless conduct.

Admitting only jurisdiction of the court the defendant hospital

answered separately, and the defendant doctors and their professional association also answered, all denying the claims filed against them.

After considerable discovery the hospital filed a motion for summary judgment, and a motion for summary judgment on behalf of defendant doctors and their professional association was filed and heard. The trial court granted the motion of the defendant hospital and directed the entry of a final judgment as to said defendant since there was no just reason for delay. The court then granted the motion for summary judgment of the professional association and the medical doctors, stating therein that the plaintiff had given an informal consent to the procedure. The court held "there was no duty to inform Plaintiff of the tube, the placement of the tube, the selection of the number 8 tube, and the time that it was left in place was a matter of medical judgment, the testimony of Dr. Ned M. Franco on behalf of the Plaintiff showed that the use of such tube and the leaving [it] in place was within the accepted medical practice, and the migration of the tube from the placement site into the bladder was the proximate result of normal bodily action; plaintiff's post-operative damages were not proximately caused by any of the defendants," and a final judgment was entered in favor of the remaining defendant doctors and defendant professional association. Plaintiff appeals.

The majority of this court has affirmed in part and reversed in part, holding specifically in Division 1 that an issue of fact remains as to whether the medical doctors were negligent in the postoperative treatment of the plaintiff, that is, in the removal of the catheter by "yanking it out," producing excruciating pain and having produced no medical testimony establishing that the procedure at that time was proper. Hence, the plaintiff was not required to produce contrary expert opinion. The majority also holds that an issue of fact remains as to whether the doctors were negligent in failing to monitor the location of the catheter and in failing to remove it until a month after surgery. I agree fully with the majority opinion insofar as it affirms the grant of a summary judgment in favor of the hospital. See Division 2 thereof. However, it is my opinion that proper medical testimony was presented establishing that defendants' treatment (operation and postoperative) was in compliance with the standard that should be exercised by the medical community in general. See *Slack v. Moorhead,* 152 Ga. App. 68, 71 (262 SE2d 186).

In cases involving professional malpractice one of the more recent decisions of the Supreme Court holds: "[I]n those cases where the plaintiff must produce an expert's opinion in order to prevail at trial, when the defendant produces an expert's opinion in his favor on

motion for summary judgment and the plaintiff fails to produce a contrary expert opinion in opposition to that motion, then there is no genuine issue to be tried by the jury and it is not error to grant summary judgment to the defendant. *Anderson v. Crippen,* 122 Ga. App. 27 (176 SE2d 196) (1970); *Dickerson v. Hulsey,* 138 Ga. App. 108 (225 SE2d 464) (1976)." *Howard v. Walker,* 242 Ga. 406, 408 (249 SE2d 45). See *Parker v. Knight,* 245 Ga. 782 (267 SE2d 222).

In the case sub judice expert medical opinion was given in favor of all the defendants that the defendant physicians exercised a proper degree of care and skill and that the treatment rendered was appropriate. Plaintiff sought to show by one of the experts that he (the expert) had expressed an opinion as to the required standard of care in which he stated that he might have obtained an X-ray to show the location of the No. 8 tube sooner than the defendant urologist did but did not testify that anything done by the defendants did not comport with good standards of care, rather stating his own personal practices. The personal practices of an individual physician establishes no standard the breach of which can be construed as negligence. See Code § 84-924; *Kenney v. Piedmont Hospital,* 136 Ga. App. 660 (222 SE2d 162); *Slack v. Moorhead,* 152 Ga. App. 68, supra.

Plaintiff also alleged negligence in the failure of defendant-medical doctors to advise him of the presence of the tube and to restrict his activities to avoid postoperative complications. Dr. Coleman denied this, and plaintiff failed to offer testimony to dispute this issue; all of which did not require expert opinion to contest this issue. In fact, plaintiff admitted he was instructed by Dr. Coleman after the operation to restrict his activities and not lift anything heavy.

In my opinion the plaintiff failed to support his contention of negligence with evidence to overcome expert opinion offered to show the treatment rendered was appropriate. Certain axioms which are always present with reference to suits involving malpractice are succinctly set forth in *Hayes v. Brown,* 108 Ga. App. 360 (133 SE2d 102). These are as follows:

"(a) The degree of care and skill required of a practicing surgeon in the performance of his service is that degree which, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally.

"(b) The proper standard of measurement for a jury to apply to the acts of a doctor to determine whether he exercised a reasonable degree of care and skill must be established by testimony of physicians, for it is a medical question.

"(c) The law recognizes that medicine is an inexact science at best and all a doctor may do is to assist nature in accordance with the

present state of medical experience.

"(d) The presumption is that the medical or surgical services were performed in an ordinarily skillful manner."

Testimony showing a mere difference in views between surgeons as to operating techniques, or as to medical judgment exercised, is insufficient to support an action for malpractice where it is shown that the procedure preferred by each, or the judgment exercised, is an acceptable and customary method of performing the surgery.

The Supreme Court of Georgia in *Parker v. Knight,* 245 Ga. 782, supra, in reversing this court held that a physician's own testimony, on a medical malpractice case against him, could be used as expert testimony.

In the case sub judice, the testimony of Dr. Coleman (a defendant) shows that the method used on November 25, 1975, was a method he customarily used and was normally 90% effective in removing the tube under local anesthesia. Under *Parker v. Knight,* 245 Ga 782, supra, this testimony as to the medical procedure used and the presumption of professional competence arising therefrom satisfies defendants' burden of showing the use of competent medical procedures. This showing shifts the burden to plaintiff to prove by competent medical testimony that this procedure was a procedure not acceptable to the medical profession in general.

Plaintiff proved by his own medical expert Dr. Franco that the procedure used by Dr. Coleman was an acceptable medical procedure and was used by competent urologists. His only distinction was that he would probably have used a different procedure; however, within Dr. Franco's testimony, the procedure used remains within the presumption that it was done in accordance with a reasonable degree of medical care and skill.

Plaintiff having failed to support his contention of negligence with evidence here to overcome the expert opinion offered to show that the treatment rendered was appropriate, there was no error in granting defendant doctors' and their professional association's motion for summary judgment.

I, therefore, respectfully dissent.

I am authorized to state that Judge Birdsong and Judge Sognier join me in this dissent.