65090. SKINNER v. COLEMAN-NINCIC UROLOGY CLINIC, P. A. et al.

BIRDSONG, Judge.

This is a continuation of *Skinner v. Coleman-Nincic Urology Clinic, P. A.,* 156 Ga. App. 638 (275 SE2d 724). In the above styled case, this court reversed in part and affirmed in part the grant of summary judgment to the medical defendants. The judgment granting summary judgment in favor of Doctors Memorial Hospital was therein affirmed, and it is no longer a defendant in this case. It was also held that expert opinion presented by the defendant doctors established "the absence of negligence with respect to the selection and placement of [a] catheter [with reference to an operation for the removal of a kidney stone located in the plaintiff's left ureter]." *Skinner,* supra, p. 639. However, it was held that all acts of negligence alleged in the complaint were not eliminated and an issue of fact remained as to whether defendant doctors were negligent in the treatment of plaintiff with reference to the removal of the catheter four weeks after the operation and also "in failing to properly monitor the location of the catheter and in failing to remove it until . . . a month after surgery." No medical testimony had been presented establishing whether the defendant doctors' post-operative treatment of plaintiff "was in compliance with the 'standard (that) should be . . . exercised by the medical community generally.' *Slack v. Moorhead,* 152 Ga. App. 68, 71 (262 SE2d 186)." *Skinner,* supra, p. 640.

On remittitur the case proceeded to trial. At the conclusion of plaintiff's evidence, the remaining defendants moved for directed verdict on all issues. The trial court reserved ruling on this motion and allowed the case to be submitted to the jury. A verdict was then returned by the jury in the amount of $6,500 ($564 hospital bill, $1,556 loss of work, and $4,380 punitive damages, charged to pain and suffering). Whereupon, the court announced its intention to direct the verdict on all issues and instructed counsel for the defendants to

prepare an order to this effect setting forth that the jury had returned a verdict for $6,500 against defendant Dr. Coleman only (who performed the surgery) and said verdict was set aside as the court granted the motion for directed verdict to all defendants. Judgment was entered accordingly, and the plaintiff appeals. *Held:*

1. *Slack v. Moorhead,* 152 Ga. App. 68, 71, supra, requires the courts of this state, in medical malpractice negligence cases, to presume that a physician performs his skills in the medical and surgical fields in a skillful manner, citing *Shea v. Phillips,* 213 Ga. 269, 271 (2) (98 SE2d 552). Hence, the burden is on the plaintiff to show a lack of due care, skill, and diligence in such cases. See *Akridge v. Noble,* 114 Ga. 949, 958-960 (41 SE 78); *Fincher v. Davis,* 27 Ga. App. 494 (2) (108 SE 905). At p. 71, the *Slack* case, supra, sets forth that "the proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses," citing *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45). Thus, to establish medical negligence the evidence presented by a plaintiff patient must show a violation of the degree of care and skill required of a physician as set forth in Code Ann. § 84-924 (now OCGA § 51-1-27, effective November 1, 1982) by failing to exercise a reasonable degree of care and skill, that is, the practitioner failed to provide such standard of care as that which under similar conditions and like circumstances is ordinarily employed by the medical profession generally. See *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 664 (222 SE2d 162), and cases cited; *Slack v. Moorhead,* 152 Ga. App. 68, 71, supra. In the case sub judice, there is no evidence that the defendant Dr. Coleman in the operation for the removal of the kidney stone or the removal of the splinting catheter which had been left in plaintiff's body for four weeks after the operation had in any wise failed to use a reasonable degree of care and skill as required by the above law in performing these operations.

However, the evidence does give rise to an issue involving Dr. Coleman's post-operative treatment with reference to the time during which the catheter (a foreign body) was left in his body following the first operation. The theory of plaintiff's case is based on his injuries resulting therefrom, special damages for the extra period of hospitalization ($564) time lost from work ($1,556) and his pain and suffering ($4,380). These alleged damages all depend upon the defendant doctor's alleged negligence in failing to advise Mr. Skinner of the implanting of a catheter, to properly monitor the location of the catheter and failing to remove it until a month after surgery.

The evidence established the accepted standard of medical care prevailing in the general medical community required that the patient be told that a tube has been left in him before he has been sent

home following such operation. The commonly accepted standard of medical practice in the general medical community with reference to the time that a splinting catheter could be left in a patient's body was shown to be "from one week to six weeks or over," and normally a catheter of this type is best removed when "it was straight up and down in the ureter so that you just grasp the end of it and pull it out than it would be to try and grasp it curled up in the bladder" (the splinting catheter having descended in this case to the bladder requiring that it be removed therefrom after its migration from the ureter). The generally accepted medical practice with regard to the checking on the position of the tube is by X-ray. It was also shown that the hospital record post-operative orders following the first operation made no mention of the presence of the foreign body (the splinting catheter) as having been left in the patient. No X-ray was taken of the patient during the period of his convalescence until the day the splinting catheter was removed. Skinner's testimony is that Dr. Coleman had forgotten about the catheter left in his body and same had migrated to the bladder causing him damage as established. He contends that if Coleman had properly X-rayed to ascertain the position of the tube and removed it earlier he would not have been subjected to the intense pain and suffering, the further hospitalization and loss of work that he experienced. The jury apparently accepted Skinner's contention in that the verdict for $6,500 was based on these items of general damages.

This court is bound by the rule that only where there is no conflict in the evidence, and a verdict for the winning party is demanded as a matter of law is a directed verdict proper. *State Farm Mut. Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878). Furthermore, evidence in cases of directed verdicts must be construed most favorably toward the party opposing the motion. *Nationwide Mut. Ins. Co. v. Ware,* 140 Ga. App. 660, 664 (231 SE2d 556).

Mr. Skinner's evidence (offered by one of the appellee doctors) authorized a jury to conclude the accepted standard of medical care prevailing in the general medical community, requires a patient be told that a tube has been left in his body before he has been sent home following such operation. In this case the jury could believe such information was not communicated to Mr. Skinner. Thus, Mr. Skinner was unaware that the inception of pain in his bladder and blood in his urine might be the result of the catheter left in his body migrating to his bladder (a recognized risk) rather than the diminishing residuals of urinary tract procedures. The jury was warranted in concluding that the treating physician simply forgot the placement of the catheter in the canal and made it impossible for his

patient to remind the doctor that the beginning discomfort might be the product either of the catheter causing festering or migrating to the bladder (since Skinner was ignorant of the fact). Because the symptoms at first were not severe, Dr. Coleman delayed an X-ray until the symptoms exacerbated, the condition deteriorated and surgical procedure was required to remedy the mistake.

Though the period of time the catheter was left in Skinner's body was not excessive, the conclusion is ineluctable that the physician failed to follow usual medical procedure by not informing his patient that a tube was in the patient's body, and it was this lack of communication together with the forgetfulness of the doctor that allowed sufficient time to elapse to suffer the complete migration of the catheter to the bladder. We conclude the jury could have and apparently did determine this was the primary causation of the subsequent operative costs, loss of wages, and pain and suffering. Inasmuch as the verdict in favor of the treating physician was not demanded and indeed the evidence supports the verdict of the jury, the trial court erred in directing the verdict in favor of Dr. Coleman. This case is returned to the trial court for action consistent with this opinion.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 1, 1983.

*Joseph C. Rary, Robert P. Hoyt,* for appellant.
*Robert M. Tanner,* for appellees.