### 69955. DUGGER v. DANELLO.
(334 SE2d 3)

BEASLEY, Judge.

The patient appeals the grant of the defendant physician's motion for a directed verdict, made at the close of plaintiff's evidence in a medical malpractice case. The sole enumeration of error is that the trial court erred in concluding that the patient had failed to introduce sufficient expert medical evidence to show that the physician deviated from the required standard of care.

1. The testimony of plaintiff's expert, a general practitioner in Walhalla, South Carolina, was by agreement of the parties taken by deposition in lieu of his appearance at trial. The deposition was then admitted in evidence and forms part of the record on appeal, although a transcript of the trial was deliberately omitted by appellant.

Appellee argues that we therefore cannot reach the merits of the issue on appeal because the transcript is necessary for a consideration of it. While that is generally true, *Tempo Carpet Co. v. Collectible Classic Cars*, 166 Ga. App. 564 (305 SE2d 26) (1983), *Brown v. Donahoo*, 141 Ga. App. 309, 310 (1) (233 SE2d 269) (1977), the reason is that we would need to examine the evidence produced at trial to ascertain whether it together with all reasonable deductions or inferences therefrom demand a particular verdict, a verdict against the non-moving party. *Carver v. Jones*, 166 Ga. App. 197, 199 (3) (303 SE2d 529) (1983). It would be authorized, of course, only where reasonable persons would not differ and where there is no reasonable inference supported by evidence which would authorize a verdict to the contrary. *Findley v. McDaniel*, 158 Ga. App. 445, 446, 447 (1) (280 SE2d 858) (1981).

In this case, the sole issue is whether Dr. Earle gave testimony of 1) the standard of care and skill ordinarily employed by the medical profession generally under similar conditions and like circumstances, *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (3) (222 SE2d 162) (1975); *Slack v. Moorhead*, 152 Ga. App. 68, 71 (262 SE2d 186) (1979); and 2) defendant's failure to meet that standard of care, i.e., his significant deviation from it. *Jackson v. Gershon*, 165 Ga. App. 492, 493 (300 SE2d 335) (1983). If he did, a directed verdict was not authorized, and the question was subject to jury determination. If he did not, however, plaintiff's case was left with a gaping hole which could not support a jury verdict in his favor. The deposition, which appellee acknowledges was introduced at trial, as it appears was planned,[1] is all we need to decide the merits of the issue on appeal. It would be not only fruitless but also an indefensible expenditure of funds and an unnecessary delay in the appeal process of this case to require that the deposition *again* be transcribed as being a part of the trial transcript. It would be identical. Appellant is right; he has fully discharged his duty to present the court with all that is needed for appellate review. Often an entire transcript and sometimes any transcript at all, would be superfluous. The law, which is practical, only requires that which the appeal "draws in question." OCGA § 5-6-41 (c).

2. Thus we get to the merits, but here both parties fall down. Although they each recite narratively how Dr. Earle's testimony either provides the crucial evidence or omits it, neither gives a single ". . . citation of such other parts of the record or transcript as are

---

[1] At the beginning of the deposition, it is referred to as a deposition "de bene esse," and counsel asks: "Can you describe for our jury the nature of your practice." Four times more in the deposition the jury is referred to, three of those by defendant-appellee's counsel. This deposition followed an initial telephone deposition a week earlier.

essential to a consideration of the errors complained of." This violation of Court of Appeals Rule 15 (a) (1) and (c) (3) requires us to hunt through the forty-eight-page deposition for the testimony alluded to in each instance. The reviewing court should not have to search for the treasures when the parties know where they are hidden, especially since each party wants its own to be discovered. We will in this case embark upon an exploration because the law favors that we "bring about a decision on the merits of every case appealed . . ." OCGA § 5-6-30. But failure to comply with the rules may lead to sanctions. Court of Appeals Rule 7. Each enumerated error in an appealing party's brief must be supported by specific reference to the record or transcript or both, and any argument or assertion founded on particular portions of evidence must be supported by a reference to page or pages of transcript or record where the evidence may be found, and such rules promulgated by this court pursuant to its rule-making authority "are binding on those who practice in this court and must be observed." *Crider v. State*, 115 Ga. App. 347 (1) (154 SE2d 743) (1967); accord *Justice v. Dunbar*, 152 Ga. App. 831 (264 SE2d 301) (1979). The absence of specific page references is tantamount to an abandonment of the enumerations of error. *Cowart v. Webster*, 152 Ga. App. 542, 543 (4) (263 SE2d 277) (1979). We are all bound, bench and bar alike, to the spirit expressed in the 1983 Constitution of Georgia (dealing with uniform trial court rules) that rules "provide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions." Art. VI, Sec. IX, Par. I.

3. The patient claims as malpractice that the emergency room doctor did not meet the required standard of care because he failed to explore or probe the full depth of the knife wound to the patient's arm to ascertain whether there was arterial bleeding and so missed it. He claims that there were a number of symptoms (pain on moving the fingers, meat beginning to push out of the wound) which disclosed the probability of what in fact existed, a lacerated artery in the sublimis muscle, which in turn caused a compartment syndrome. Thus it is allegedly a case of omission rather than commission. It is clear from a reading of Dr. Earle's testimony that he gave evidence that the degree of care and skill customarily brought to the exercise of the medical profession under similar circumstances would have required a probe to the full depth of the laceration, even if it required extending the laceration by incision. That is what plaintiff's counsel asked him. And on cross-examination, he was repeatedly asked what should be or should have been, or ought to be done in such a situation. While it could have been more clearly expressed, all of this was in the context of the standard ordinarily employed by the medical profession generally. *Kenney v. Piedmont Hosp.*, supra; *Slack v. Moorhead*, supra. Although Dr. Earle said, in answer to questions from defendant's coun-

sel, that he did not know what the national standards were,[2] if there were any, or how the majority of competent emergency room physicians would have handled plaintiff's case, such measurements are not the legally recognized ones with respect to establishing the duty, i.e., the degree of care and skill required of the physician in malpractice cases in Georgia.

We find that there was sufficient evidence to avoid a directed verdict, thus requiring a new trial. See, e.g., *Skinner v. Coleman-Nincic Urology Clinic*, 165 Ga. App. 280, 281 (1) (300 SE2d 319) (1983).

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 24, 1985 —
REHEARING DENIED JULY 31, 1985 — 

*Thomas R. Herndon, Andrew Estes*, for appellant.
*William P. Franklin, Jr., Thomas A. Withers*, for appellee.

---

[2] The question of standards "generally" or "of the locality" with respect to legal malpractice was discussed in *Kellos v. Sawilowsky*, 254 Ga. 4 (325 SE2d 757) (1985).