### A96A1839. McNABB et al. v. LANDIS et al.
(479 SE2d 194)

Judge Harold R. Banke.

Don McNabb, individually, and as executor of the estate of his wife, Patty McNabb ("McNabb"), sued Anthony Landis, D.O., and Suburban Hematology-Oncology Associates, P.C. ("Landis") asserting a medical malpractice claim for the wrongful death of his wife. Following a defense verdict, McNabb enumerates six errors.

In August 1991, Patty McNabb was diagnosed with breast cancer. Surgery revealed that the cancer had spread to several axillary lymph nodes. Her surgeon, Wallace Martin, M.D., recommended chemotherapy with Landis. During her initial consultation, Patty McNabb informed Landis that she had a family history of heart problems. Her medical records indicate that when Landis examined her, she was approximately five feet, four inches tall and weighed about 200 pounds. Based on his physical examination, Landis concluded that Patty McNabb did not exhibit signs of underlying heart disease. Landis treated Patty McNabb with several drugs including adriamycin, a highly potent drug known to cause serious heart damage in some patients. Having decided that Patty McNabb lacked any cardiac risk factor contraindicating adriamycin's use, Landis continued to treat her with it over several months. In February 1992, Patty McNabb was diagnosed with irreversible adriamycin-induced cardiomyopathy. Shortly after her rejection as a candidate for a heart transplant, she died in April 1992.

McNabb's expert, Gary B. Witman, M.D., testified that the failure to obtain a baseline EKG before administering adriamycin deviated from the applicable standard of care. Witman testified that excellent alternative chemotherapy drugs were then available including another drug with less cardiotoxicity. It is undisputed that Landis did not obtain a baseline EKG and that Patty McNabb's records included two abnormal EKGs, one obtained before Landis prescribed adriamycin and one performed during the time of her treatment. Landis testified that he never reviewed either abnormal EKG and was unaware of their existence until after her death. The gravamen of McNabb's malpractice claim was that Landis failed to obtain a baseline EKG and breached the standard of care by authorizing adriamycin without further testing. McNabb further contended that Landis' failure to review the existing and available abnormal EKGs from August and October 1991 constituted negligence. Held:

1. The trial court erred in its charge on hindsight. The trial court omitted crucial language from the hindsight charge approved in *Haynes v. Hoffman*, 164 Ga. App. 236, 238 (3) (296 SE2d 216) (1982). Here, the trial court incompletely charged, "I charge you that in a medical malpractice action a defendant cannot be found negligent on the basis of an assessment of a patient's condition which only later in hindsight proves to be incorrect so long as the initial assessment was made in accordance with reasonable standards of medical care. In other words, the concept of negligence does not include hindsight." This charge omitted: "[N]egligence consists in not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible." *Haynes*, 164 Ga. App. at 238 (3). This omission renders the charge used an incomplete statement of law. See id.

Moreover, the evidence did not warrant a charge on hindsight. The hindsight charge is appropriate in a medical malpractice case where the evidence raises an issue as to whether the negligence claim is premised on later acquired knowledge or information not known or reasonably available to the defendant physician at the time he provided the medical care. *Horton v. Eaton*, 215 Ga. App. 803, 807 (4) (452 SE2d 541) (1994); compare *Haynes*, 164 Ga. App. at 238 (3).

Here, at issue was whether Landis' failure to obtain and interpret a baseline EKG on the decedent comported with the applicable standard of care; in other words, whether Landis' authorization of the use of adriamycin without the conducting of any preliminary testing was negligent. Hindsight, based on information that became available later, was not at issue. Compare *Yuscavage v. Jones*, 213 Ga. App. 800, 803 (5) (446 SE2d 209) (1994). A charge which injects issues into a case not supported by the evidence tends to confuse a jury as to the true issues. *McCoy v. Alvista Care Home*, 194 Ga. App. 599 (391 SE2d 419) (1990). Because the jury was improperly charged on hindsight, we reverse.

Having decided to reverse, we reach only those issues that may recur during the trial of this matter.

2. The trial court did not err in denying McNabb's motion to limit or disallow the testimony of Landis' six expert witnesses. The record shows that four of the six physicians at issue provided medical care to the decedent or performed the autopsy. OCGA § 9-11-26 (b) (4) (A) (i) had no application to these witnesses since their knowledge and opinions arose from personal involvement with the decedent. See *Candler Gen. Hosp. v. Joiner*, 180 Ga. App. 455, 458 (2) (349 SE2d 756) (1986). The other two witnesses had been identified as experts months before trial in supplementary responses to McNabb's continuing interrogatories. Landis had provided summaries for their opinions and stated the grounds for each one. See OCGA § 9-11-26 (b) (4)

(A) (i); *Austin v. Kaufman*, 203 Ga. App. 704, 709 (7) (417 SE2d 660) (1992).

3. McNabb contends that the trial court impermissibly commented on the testimony of Gary Witman, M.D. and violated OCGA § 9-10-7. McNabb's failure to object or move for a mistrial on this issue precludes appellate review. *Provost v. Gwinnett County*, 199 Ga. App. 713, 714 (4) (405 SE2d 754) (1991).

4. The trial court did not err in refusing to allow McNabb's counsel to gratuitously inject Landis' financial status into closing argument. Facts not in the record and calculated to prejudice the opposing party cannot be introduced into the case in closing argument. *Williams v. Piggly Wiggly Southern*, 209 Ga. App. 490, 491 (433 SE2d 676) (1993); OCGA § 9-10-185.

5. The trial court did not err in excluding certain portions of the testimony of McNabb's expert, Donald Jansen, M.D. It is undisputed that at the time the deposition was videotaped the parties agreed to make all objections on the record and that these portions of Jansen's testimony were not objected to. Despite that stipulation, at trial, Landis moved to exclude certain portions of Jansen's deposition testimony.

At its discretion, a trial court may exclude evidence whose probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or confuse issues or mislead the jury. *Hunter v. Hardnett*, 199 Ga. App. 443, 444 (1) (405 SE2d 286) (1991). The applicable standard of care is that employed by the medical profession generally and not what one individual doctor thought was advisable or would have done under the circumstances. *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (3) (222 SE2d 162) (1975); see *Slack v. Moorhead*, 152 Ga. App. 68, 71 (262 SE2d 186) (1979). Here, the excluded testimony pertained to Jansen's personal views and personal opinions as to the care and treatment he himself would have rendered. See id.; *Hunter*, 199 Ga. App. at 444.

*Judgment reversed and case remanded. McMurray, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 10, 1996.

*Greer, Klosik & Daugherty, Frank J. Klosik, Jr., John F. Daugherty, Deborah M. Carter*, for appellants.

*Long, Weinberg, Ansley & Wheeler, Earl W. Gunn, Patricia M. Peters*, for appellees.