**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-60297

---

DOROTHY FRAZIER, Individually and as Executrix
of the Estate of Lee Frazier, Deceased,

Plaintiff-Appellant,

versus

COOPER TIRE & RUBBER COMPANY; ET AL,

Defendants,

JACK SARTIN, DR.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Mississippi
(1:97-CV-15)

---

October 11, 2000

Before DAVIS, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

This is an appeal from the district court's grant of judgment as a matter of law in a

an action brought by Dorothy Frazier against Dr. Jack Sartin for medical malpractice in his

performance of a surgical procedure on her deceased husband, Lee Frazier. Mrs. Frazier appeals the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court's grant of judgment as a matter of law in favor of Dr. Sartin. For the following reasons, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

Lee Frazier suffered from pancreatic cancer. His treating physician was Dr. Jack Sartin. On June 12, 1995, Mr. Frazier underwent surgery in connection with the cancer at Northwest Regional Medical Center. Dr. Sartin was Mr. Frazier's lead surgeon during the June 12th surgery. Dr. Paul Bauer assisted Dr. Sartin during that surgery.

Dr. Sartin first performed an exploratory laparotomy, which included opening and exploring Mr. Frazier's abdomen. Dr. Sartin then performed a pancreatoduodenectomy, also known as a "Whipple" procedure. A Whipple involves the resection, or removal, of a pancreatic tumor. Dr. Sartin performed the Whipple despite Dr. Bauer's advice that he should conduct a palliative procedure, which would have simply alleviated Mr. Frazier's symptoms until he died.

During surgery, the portal vein was cut, and Mr. Frazier lost a considerable amount of blood. He required a transfusion of fifteen units of blood. Ultimately, Dr. Sartin removed the tumor and part of the pancreas. Following the surgery, Mr. Frazier experienced various complications, including renal failure and staph pneumonia. He died on July 13, 1995.

Dorothy Frazier, Mr. Frazier's widow, sued Dr. Sartin for negligence in connection with the June 12th surgery. She also sued Mr. Frazier's employer, Cooper Tire & Rubber Company, asserting claims under the Employee Retirement Income Security Act ("ERISA"). The district court severed the ERISA claims from the medical malpractice claims. The case against Dr. Sartin proceeded to trial, and after Mrs. Frazier presented her case, the district court granted Dr. Sartin's motion for

2

judgment as a matter of law. The ERISA claims are now the subject of a separate appeal. This Court denied Mrs. Frazier's motion to consolidate the two appeals. The district court had jurisdiction over this case under 28 U.S.C. § 1331. The district court had supplemental jurisdiction over the medical malpractice claim, and this Court has jurisdiction over the appeal from the final judgment of the district court in the malpractice claim under 28 U.S.C. § 1291.

The district court found that Mrs. Frazier failed to establish the applicable standard of care. The court based its decision on the inadequacy of the testimony of Dr. Bauer, whose deposition testimony was presented at trial. Dr. Bauer was Mrs. Frazier's only expert. Thus, the case against Dr. Sartin necessarily depended on Dr. Bauer's testimony. Although he often couched his opinion in terms of what he personally would or would not have done, Dr. Bauer made it clear that Dr. Sartin fell below the generally accepted standard of care during the June 12th surgery. He clearly indicated that the general course of treatment for someone in Mr. Frazier's condition does not include the Whipple procedure.

Dr. Bauer testified that "[t]he majority of the time, most of the people with pancreatic cancer, by the time you see them, aren't really candidates for Whipples because by the time you see them, their disease is pretty advanced." He also stated that Mr. Frazier "didn't have a resectable lesion." Dr. Bauer determined that the tumor was not resectable because it was probably invading major blood vessels. He testified that "usually rather universally, most people will not attempt to do a--any type of curative resection for a pancreatic head lesion if it appears to be invading the major blood vessels in the abdomen, which are intimately related to the head of the pancreas." Moreover, according to Dr. Bauer, when the lesion is invading major vessels, "[i]t's incurable. It's considered incurable by most people; basically by everyone." Dr. Bauer testified that during the June 12th surgery he

3

repeatedly told Dr. Sartin that the tumor was not resectable; however, Dr. Sartin continued with the Whipple procedure.

At the close of Mrs. Frazier's case, the district court concluded that Dr. Bauer's deposition testimony failed to establish a standard of care. The court found that Dr. Bauer had merely testified that his personal opinion differed from the course of conduct that Dr. Sartin chose to take and that Dr. Bauer had failed to establish the standard of care that Dr. Sartin should have followed. The court granted Dr. Sartin's motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.

DISCUSSION

Mrs. Frazier argues that the district court erred in ruling that the she failed to establish the applicable standard of care. Specifically, Mrs. Frazier argues that she presented evidence that the standard of care in this case contraindicated performing a Whipple if the tumor had grown beyond the pancreas. We review de novo a ruling on a motion for judgment as a matter of law, applying the same standards applied by the district court. See McCoy v. Hernandez, 203 F.3d 371, 374 (5th Cir. 2000). We view all evidence and reasonable inferences in favor of the non-moving party. See Baltazor v. Holmes, 162 F.3d 368, 373 (5th Cir. 1998). We will conclude that judgment as a matter of law should have been granted only if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not have reached a contrary verdict. See id.

Mississippi law applies to this state law medical malpractice claim. Under Mississippi law, to establish a prima facie case for medical malpractice, a plaintiff must establish the following:

4

(1) The existence of a duty on the part of the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
(2) A failure to conform to the standard required of the defendant;
(3) An injury to the plaintiff proximately caused by the breach of such duty by the defendant.

Drummond v. Buckley, 627 So.2d 264, 268 (Miss. 1993). In establishing the standard of care, the Mississippi Supreme Court has held that "[t]here is no magical form to which a plaintiff's supporting expert opinion must conform, so long as its import is apparent." Kelley v. Frederic, 573 So.2d 1385, 1389 (Miss. 1990). In Kelley, an expert gave his opinion that a particular course of treatment followed by the defendant was extreme and that he would not have pursued that course of treatment. See id. The court found the expert's opinion to be sufficient to establish the standard of care despite his failure to use the words "'minimal standard of care required of physicians.'" Id. Moreover, the court found that "[s]ufficient unto the day [was the expert's] opinion of what should have been done and of the fact that the course [the defendant] pursued was 'extreme.'" Id.

Applying the principles enunciated in Kelley, this Court concludes that Dr. Bauer's testimony was sufficient under Mississippi law to establish the applicable standard of care. Considering all of Dr. Bauer's testimony and all reasonable inferences therefrom in favor of Mrs. Frazier, we cannot conclude that the facts and inferences point so strongly and overwhelmingly in favor of Dr. Sartin that reasonable jurors could not have ascertained the applicable standard of care. In his testimony, Dr. Bauer referred to what "most people" "usually" or "universally" would not do. Although Dr. Bauer made references to his personal opinion at various points throughout his testimony, he clearly stated that the generally accepted course of treatment for patients in Mr. Frazier's condition does not include conducting a Whipple procedure. Thus, he established the applicable standard of care.

Dr. Sartin argues that Dr. Bauer based his testimony solely on his own personal standards of

5

practice. He cites several cases, none of which were decided by a Mississippi court, for the proposition that personal opinions by expert witnesses are inadmissible to establish the applicable standard of care. The cases that Dr. Sartin cites are distinguishable from the present case.

In McNabb v. Landis, the issue on appeal was whether the trial court erred in excluding portions of an expert's testimony in which the expert referred to his personal opinion. 479 S.E.2d 194, 196 (Ga. Ct. App. 1996). However, the issue facing this Court is whether, under Mississippi law, Dr. Bauer's testimony was sufficient to establish the standard of care, not whether references to his personal opinion should have been excluded. In Dine v. Williams, the issue on appeal was whether the trial court erred in sustaining the defendants' objections to questions asked of the plaintiffs' expert regarding his own opinion. 830 S.W.2d 453, 457 (Mo. Ct. App. 1992). Here, we are not confronted with the propriety of the questions asked in order to elicit the standard of care from Dr. Bauer, but rather the adequacy of his responses. In Meek v. Shepard, the expert did not render an opinion with regard to the standard of care without qualifying it in terms of his personal opinion. 484 A.2d 579, 582 (D.C. 1984). In this case, however, there were portions of Dr. Bauer's testimony during which he did not qualify his opinion in terms of his personal views. Instead, he testified as to what "most people" "usually" or "universally" would not do.

We note that the district court made reference to Mrs. Frazier's failure to establish a causal connection "between the breach of any established standard of care and the untoward result in Mr. Frazier's death." However, having closely reviewed the hearing transcript, we find that it is not clear that causation was an independent basis for the district court's grant of judgment as a matter of law. Instead, it appears that the district court's brief reference to causation was in connection with and to emphasize its core finding that no standard of care had been established.

6

CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of judgment as a matter of law and REMAND this case for further proceedings consistent with this opinion. The court expresses no view regarding the merits of this case.