S01G1138. JOHNSON et al. v. RIVERDALE ANESTHESIA ASSOCIATES, P.C. et al.
(563 SE2d 431)

SEARS, Presiding Justice.

Certiorari was granted in this medical malpractice action in order to consider the Court of Appeals' ruling forbidding the plaintiff from cross-examining the defendants' expert witness as to how he personally would have treated the plaintiffs' decedent. We conclude that because the standard of care in medical malpractice cases is that which is employed by the medical profession generally, and not what one individual physician would do under the same or similar circumstances, how a testifying medical expert personally would have treated a plaintiff or a plaintiff's decedent is not relevant to the issue of whether a defendant physician committed malpractice. Moreover, we conclude that how a testifying medical expert personally would have treated a plaintiff or a plaintiff's decedent cannot be used to impeach the expert's credibility. Therefore, we affirm.

The decedent, Clair Johnson, suffered a severe adverse reaction to anesthesia she received during surgery. The reaction caused Mrs. Johnson's oxygen supply to be interrupted, resulting in massive brain trauma and death. Her husband, Donald Johnson, along with the administratrix of her estate (collectively "Johnson"), sued the

anesthesiologist, Dr. Lawhead, and his employer, Riverdale Anesthesia Associates, P.C. (collectively "Anesthesia Associates"), alleging malpractice.

At trial, Johnson alleged that Anesthesia Associates had committed malpractice by failing to "pre-oxygenate" Mrs. Johnson. Pre-oxygenation is a procedure where, before surgery, a patient is given a measure of pure oxygen, providing her with a reserve to draw from, should her oxygen supply be interrupted during surgery. The trial court granted Anesthesia Associates' motion in limine to prevent Johnson from cross-examining the defendants' medical expert, Dr. Caplan, about whether he, personally, would have pre-oxygenated Mrs. Johnson.

After the jury found in favor of Anesthesia Associates, Johnson appealed, claiming the trial court erred by preventing Johnson from cross-examining Dr. Caplan as to whether he would have elected to pre-oxygenate Mrs. Johnson. The Court of Appeals affirmed,[1] and this Court granted certiorari.

1. The crux of Johnson's complaint against Anesthesia Associates was the contention that the latter violated the applicable standard of care by failing to pre-oxygenate Mrs. Johnson.[2] Johnson attempted to establish this breach of care through the testimony of an expert witness.[3] Johnson claimed that if pre-oxygenation had been administered, Mrs. Johnson would have been protected against the low oxygen levels that occurred during surgery and that led to her death. For its part, Anesthesia Associates claimed that because its decision not to pre-oxygenate Mrs. Johnson was consistent with the applicable standard of care, no malpractice occurred. In support of this argument, Anesthesia Associates presented the testimony of its own medical expert, Dr. Caplan.

It is axiomatic that in order to establish medical malpractice, "the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally."[4] Thus, in medical malpractice actions, "[t]he applicable standard of care is that employed by the medical profession generally and not what one indi-

---

[1] *Johnson v. Riverdale Anesthesia Assoc.*, 249 Ga. App. 152 (547 SE2d 347) (2001).

[2] See *Anthony v. Chambless*, 231 Ga. App. 657, 659 (500 SE2d 402) (1998) (establishing three essential elements to a malpractice claim: (1) a duty owed by the medical provider; (2) a breach of that duty by failing to comply with the applicable standard of care; and (3) proximately resulting harm).

[3] See *Slack v. Moorhead*, 152 Ga. App. 68 (262 SE2d 186) (1979) (except in rare instances, the question of compliance with the required medical standard of care must be presented through expert testimony).

[4] *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (222 SE2d 162) (1975).

vidual doctor thought was advisable and would have done under the circumstances."[5]

Accordingly, in cases where expert medical testimony has been presented either to support or to rebut a claim that the applicable standard of care was breached, Georgia case law holds that questions aimed at determining how the expert would have personally elected to treat the patient are irrelevant. The questioning of a medical expert witness should be disallowed as irrelevant when it "pertains to [the expert's] personal views and personal opinions as to the care and treatment he himself would have rendered."[6] Contrary to Johnson's argument, this is true regardless of whether the expert's personal views are sought through direct testimony or cross-examination; as held by the trial court in this case, a defendant's expert witness is not required to answer questions on cross-examination "as to what course of treatment he personally would have followed."[7]

It follows that the trial court did not abuse its discretion in granting Anesthesia Associates' motion in limine to prohibit Johnson from cross-examining the defendants' expert witness as to whether he personally would have pre-oxygenated the decedent, because such questioning was irrelevant to the issue of whether Anesthesia Associates breached the applicable standard of care.[8]

2. Questions aimed at determining how a defendant's medical expert personally would have treated a plaintiff or a plaintiff's decedent also are irrelevant for purposes of impeaching the expert. As explained above, a medical expert's personal practices are irrelevant to the issues in controversy in a malpractice case. It is axiomatic that a witness may not be impeached with irrelevant facts or evidence,[9] and cross-examination should be confined to matters that are relevant to the case.[10]

Moreover, when confronted with the same or similar situation, different physicians will, quite naturally, often elect to administer differing treatments, and will exercise their judgments regarding a patient's care differently.[11] However, merely because these proce-

---

[5] *McNabb v. Landis*, 223 Ga. App. 894, 896 (479 SE2d 194) (1996). See *Mayo v. McClung*, 83 Ga. App. 548 (64 SE2d 330) (1951) (the standard of care is "not a question of what one individual doctor thought was advisable."); *Slack v. Moorhead*, 152 Ga. App. at 71 (the standard of care is "not what a particular doctor would do in the circumstances.").

[6] *McNabb*, 223 Ga. App. at 896. See *Horne v. State*, 125 Ga. App. 40 (186 SE2d 542) (1971) ("Evidence which does not in any reasonable degree tend to establish the probability of the issues of fact in controversy is irrelevant and inadmissible.").

[7] *Switzer v. Gorman*, 235 Ga. App. 794, 796 (510 SE2d 581) (1998).

[8] The portion of *Prevost v. Taylor*, 196 Ga. App. 368 (4) (396 SE2d 17) (1990), that holds otherwise is hereby overruled.

[9] *Bass v. Bass*, 222 Ga. 378, 384 (149 SE2d 818) (1966).

[10] Id.

[11] See, e.g., *Kenney v. Piedmont Hosp.*, 136 Ga. App. at 664 (noting that physicians have

dures and treatments differ, it does not automatically follow that one of them fails to comply with the applicable standard of care.

Georgia precedent holds that " 'testimony showing a mere difference in views between surgeons as to operating techniques, or as to medical judgment exercised,' " is irrelevant in a medical malpractice action when the differing views or techniques are both acceptable and customary within the applicable standard of care.[12] Accordingly, questions asked on cross-examination as to how a defendant's medical expert "personally would have treated [a patient are] . . . not proper for impeachment."[13]

Therefore, the trial court did not improperly curtail Johnson's ability to impeach the testimony of Anesthesia Associates' medical expert, Dr. Caplan, by granting the defendants' motion in limine.[14]

3. As with all determinations of the relevancy of evidence, the determination in a medical malpractice case of whether evidence should be admitted as relevant to the standard of care or should be excluded as irrelevant to that standard rests within the sound discretion of the trial court.[15] For the reasons explained above, the trial court did not abuse its discretion in this case by prohibiting the cross-examination of the defendants' medical expert as to his personal medical practices, because such information was irrelevant to any issue of fact in controversy.

*Judgment affirmed. All the Justices concur, except Benham, Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In a one-sentence footnote, the majority overrules *Prevost v. Taylor*, 196 Ga. App. 368, 369 (4) (396 SE2d 17) (1990), which was not even cited by the Court of Appeals. In my opinion, *Prevost* was simply overlooked by the Court of Appeals and should not be overruled by this Court because the rationale of that decision is so persuasive:

It is true, as defendant argues, that the issue in a medical

---

"individual views and . . . individual practices.").

[12] *Brannen v. Prince*, 204 Ga. App. 866, 867 (421 SE2d 76) (1992), quoting *Hayes v. Brown*, 108 Ga. App. 360, 361 (133 SE2d 102) (1963). See *Simpson v. Dickson*, 167 Ga. App. 344 (306 SE2d 404) (1983) (reiterating the principle that medical services are presumed to have been performed in an ordinarily skillful manner, and the burden is placed entirely on a plaintiff to show a failure of due care and skill).

[13] *Switzer*, 235 Ga. App. at 796. See *Brannen*, 204 Ga. App. at 867-868.

[14] In arguing to the contrary, the dissent relies in large part upon a passage quoted from a treatise, Pegalis & Wachsman, American Law of Medical Malpractice (1993). However, our research shows that in both the 1993 and the 2002 editions of this treatise, the passage quoted by the dissent is unsupported by any citation to authority. Furthermore, our research shows that until today, no court in the nation has cited to or relied upon the treatise passage quoted by the dissent.

[15] *McNabb*, 223 Ga. App. at 896.

professional negligence action is whether the treatment met the standard of care of the profession generally and not what any one individual doctor believes is advisable. However, those cases cited by defendant involved instances where the only testimony presented to support plaintiff's claim is the individual view of one doctor and no testimony was presented as to the standard of care generally practiced by the profession. [Cits.] Here, plaintiff did not present the individual opinion of defendant's expert for the purpose of establishing the acceptable standard of care but offered it to impeach the expert's opinion that the surgery performed by defendant met the standard of care of the profession generally. "Evidence tendered for impeachment purposes need not be of the kind or quality required for proving the facts." [Cits.]

*Prevost v. Taylor*, supra at 369-370 (4).

"The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." OCGA § 24-9-64.

Over one hundred years ago, this Court held that it is the [trial] court's duty to allow a searching and skillful test of the witness' "intelligence, memory, accuracy and veracity," [cit.], and that it is better for cross-examination to be "too free than too much restricted. . . ." [Cit.]

*Eason v. State*, 260 Ga. 445, 446 (396 SE2d 492) (1990), overruled on other grounds, *State v. Lucious*, 271 Ga. 361, 365 (4) (b) (518 SE2d 677) (1999). " '(W)here the purpose is to impeach or discredit the witness, great latitude should be allowed by the [trial] court in cross-examination. . . [.]' [Cit.]" *Corley v. Harris*, 171 Ga. App. 688, 689 (2) (320 SE2d 833) (1984). "Generally, 'a party may show anything which in the slightest degree affects the credit of an opposing witness.' [Cit.]" *Pound v. Medney,* 176 Ga. App. 756, 760 (2) (337 SE2d 772) (1985).

As a general rule, the liability test to be employed by the court and the jury is the "standard of care" that a reasonably prudent physician would exercise under the same or similar circumstances as the defendant. Therefore, the ultimate test is not whether the expert would perform a medical act and/or teach a medical act in the same way or a different way as a particular defendant. *However*, such a line of inquiry *usually is admissible on the issue of credibility.* If, for example, the plaintiff's expert testifies that a defendant

deviated from a certain standard of care, said expert's credibility certainly would be severely shaken if, in fact, it can be shown that this expert has performed a medical act in the same or similar manner as the defendant. *If a defense expert has testified that a defendant's medical act conformed with a certain acceptable standard of care, the credibility of said testimony certainly would be severely shaken, if said expert conceded on cross-examination that he personally does not perform and/or teach the medical act in the same manner.* (Emphasis supplied.)

2 Pegalis & Wachsman, American Law of Medical Malpractice 2d § 14:7 (e), p. 492 (1993). The identical circumstances are present in this case. As demonstrated by an offer of proof, the defendants' medical expert would have testified on cross-examination that he would have pre-oxygenated Mrs. Johnson if she had been his patient. Plaintiffs' counsel also sought to ask Dr. Caplan how he teaches his medical students to treat patients in similar situations. Such testimony is particularly relevant to credibility here, because Dr. Caplan testified on direct examination that there was nothing that could have been done to make it safer for Mrs. Johnson to have the anesthesia.

"'A material abridgement or denial of the substantial right of cross-examination of opposing witnesses is material error and requires the grant of a new trial. (Cits.)'" *Hyles v. Cockrill*, 169 Ga. App. 132, 140 (312 SE2d 124) (1983) (on motion for rehearing), overruled on other grounds, *Ketchup v. Howard*, 247 Ga. App. 54, 61 (2) (543 SE2d 371) (2000). Because the trial court did not allow plaintiffs to conduct "a thorough and sifting cross-examination" of the defendants' medical expert, I dissent to the affirmance of the Court of Appeals' judgment.

I am authorized to state that Justice Benham and Justice Hunstein join in this dissent.

DECIDED MAY 13, 2002 —
RECONSIDERATION DENIED JUNE 7, 2002.

*Hill & Bleiberg, Gary Hill*, for appellants.
*Owen Gleaton Egan Jones & Sweeney, H. Andrew Owen, Jr., Amy Jo Kolczak, Evans & Evans, Larry K. Evans*, for appellees.
*Love Willingham Peters Gilleland Monyak, Robert P. Monyak, Lucas W. Andrews, Doffermyre Shields Canfield Knowles, Kenneth S. Canfield, Cook, Noell, Tolley, Bates & Michael, J. Vincent Cook, Henry, Spiegel, Fried & Milling, Philip C. Henry, Middleton, Mathis*

*Adams & Tate, Charles A. Mathis, Jr., Butler Wooten Overby Fryhofer Daughtery, Joel O. Wooten, Jr.*, amici curiae.