A08A0042. CONDRA et al. v. ATLANTA ORTHOPAEDIC
GROUP, P.C. et al.
(664 SE2d 281)

MILLER, Judge.

This is an appeal from the judgment entered on a jury verdict in favor of the Atlanta Orthopaedic Group, P.C. and James L. Chappius, M.D. (collectively "Atlanta Orthopaedic") and against Daphyne S. Condra and her husband, William, on the Condras' claims of medical malpractice and loss of consortium. These claims were based on Chappius' failure to monitor Ms. Condra while she was taking Tegretol, a drug prescribed by Chappius. On appeal, the Condras contend that the trial court erred (i) in granting Atlanta Orthopaedic's motion in limine prohibiting them from inquiring into the

---

personal treatment protocols or practices of its expert witnesses when prescribing Tegretol, (ii) in not allowing, on cross-examination, one such expert to testify as to his personal treatment practices, and (iii) in giving Atlanta Orthopaedic's charge on hindsight. Discerning no legal error and finding that the jury's verdict was supported by the evidence, we affirm.

Absent any material error of law, the judgment entered upon a jury verdict approved by the trial court will not be disturbed on appeal if supported by any evidence. *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990). As to questions of law, we owe no deference to a trial court's rulings thereon and apply a plain legal error standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

Viewed in the light most favorable to the verdict (*Horan*, supra, 197 Ga. App. at 153 (2)), the record shows that Ms. Condra first presented to Atlanta Orthopaedic on April 30, 1998, complaining of pain in her neck, right arm, and lower back, stemming from an August 1995 automobile accident. Dr. Tom Avonda, the first Atlanta Orthopaedic physician who saw her, prescribed Relafen, an anti-inflammatory drug, to treat her pain.

On May 22, 1998, Ms. Condra returned to Atlanta Orthopaedic and was seen by Dr. Chappius, who gave her a further prescription for Relafen and added a 30-day prescription of Tegretol. Despite the fact that a rare potential side effect of using Tegretol is aplastic anemia, Dr. Chappius did not order that Ms. Condra's blood count be monitored, either before or during the time she took the drug. Ms. Condra later developed aplastic anemia causing her bone marrow to stop producing red blood cells and platelets.

On July 7, 1998, Ms. Condra returned to Atlanta Orthopaedic complaining of worsening neck pain after receiving a chiropractic adjustment of her spine. On that date, approximately 46 days had elapsed since Dr. Chappius originally prescribed Tegretol for her, and Ms. Condra did not request that such prescription be refilled.

On July 9, 1998, Ms. Condra called her gynecologist when she began experiencing shortness of breath and leg cramping. Her gynecologist instructed her to stop taking Prempro, an anti-inflammatory that, like Tegretol and other anti-inflammatories, has been associated with aplastic anemia in rare instances. Ms. Condra testified that she did so and that her symptoms thereafter improved. On July 28, 1998, however, she was admitted to West Paces Ferry Medical Center and diagnosed with aplastic anemia.

At trial, Atlanta Orthopaedic's expert witnesses, Drs. Richard D. Franco and Peter Staats, testified that Dr. Chappius' decision not to monitor Condra's blood count complied, to a reasonable degree of medical certainty, with the applicable standard of care. Both doctors,

however, had earlier deposed that their treatment protocols included such monitoring when prescribing Tegretol. At a pre-trial hearing, the trial court granted Atlanta Orthopaedic's motion in limine prohibiting any inquiry into the personal practice protocols of the foregoing experts at trial. Following a trial, the jury returned its verdict for Atlanta Orthopaedic. The Condras appeal from the trial court's entry of its judgment thereon.

1. Ms. Condra contends that the trial court erred in granting Atlanta Orthopaedic's motion in limine based on *Johnson v. Riverdale Anesthesia Assoc.*, 275 Ga. 240 (563 SE2d 431) (2002), which held that a standard of care expert in a medical malpractice case is not subject to "cross-examination" about the manner in which the expert would have treated the condition at issue. The Condras claim that OCGA § 24-9-67.1 (f) "overrules" *Johnson* because that statute instructs Georgia courts to draw upon *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993) and its progeny to insure "that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states." OCGA § 24-9-67.1 (f).

In *Daubert*, the United States Supreme Court held that

"[g]eneral acceptance" is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence — especially Rule 702 — do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.

*Daubert*, supra, 509 U. S. at 597 (IV). Thus, to the extent that OCGA § 24-9-67.1 (f) instructs Georgia trial courts to be guided by *Daubert* and its progeny, it does so with respect to the threshold question of whether a proposed expert witness is competent to testify as such.

The question on appeal, however, is not whether Atlanta Orthopaedic's experts were qualified to testify. Rather, the question is whether the testimony the Condras sought to introduce at trial was relevant as to the applicable standard of care. More specifically, were the personal treatment protocols of Atlanta Orthopaedic's medical experts relevant to such standard of care? As to such issue, *Johnson* holds that

in medical malpractice actions, the applicable standard of care is that employed by the medical profession generally and not what one individual doctor thought was advisable

and would have done under the circumstances. Accordingly, . . . Georgia case law holds that questions aimed at determining how the expert would have personally elected to treat the patient are irrelevant. *The questioning of a medical expert witness should be disallowed as irrelevant when it pertains to the expert's personal views and personal opinions as to the care . . . he himself would have rendered . . . whether the expert's . . . views are sought through direct testimony or cross-examination[,] . . . [or] for purposes of impeaching the expert.*

(Punctuation and footnotes omitted; emphasis supplied.) *Johnson,* supra, 275 Ga. at 241-242 (1), (2); see *Davis v. Virginian R. Co.,* 361 U. S. 354, 357 (80 SC 387, 4 LE2d 366) (1960) ("Proof of malpractice . . . requires two evidentiary steps: *evidence as to the recognized standard of the medical community in the particular kind of case,* and a showing that the physician in question negligently departed from [the] standard in his treatment of plaintiff.") (emphasis supplied); see also *Palandjian v. Foster,* 446 Mass. 100, 104-105 (3) (842 NE2d 916) (2006) ("Because the standard of care is based on the care that the average qualified physician would provide in similar circumstances, the actions that a particular physician, no matter how skilled, would have taken are not [relevant].") (citations and footnote omitted); *Crawford v. Family Vision Center,* 1990 Tenn. App. LEXIS 810, *5 (1990) ("[T]he generally recognized acceptable standard of care is not proven by the practice of an individual or group, for the individual practice may be more or less careful than the generally recognized standard.") (citation omitted).

Given the foregoing, OCGA § 24-9-67.1 (f) does not "overrule" *Johnson* as Ms. Condra urges this Court to hold.

2. Neither is there merit in the Condras' claim that Dr. Staats "opened the door" to cross-examination for the purpose of impeaching his opinion as to the applicable standard of care because his testimony was contrary to his personal practices in treating patients with Tegretol. Dr. Staats based his standard of care opinion upon a broad consideration of what reasonable doctors "around the country" were doing in similar circumstances. Even were it otherwise, it is settled that cross-examination for the purpose of determining the personal treatment practices of a defendant's medical expert is impermissible to impeach such expert's opinion as to the pertinent standard of care. *Johnson,* supra, 275 Ga. at 242 (1), n. 8, overruling in part, *Prevost v. Taylor,* 196 Ga. App. 368, 369 (4) (396 SE2d 17) (1990).

3. Further, the Condras contend that the trial court erred in giving its charge on hindsight because (i) their negligence claim was

not based on after-acquired knowledge, and (ii) such charge misstated pertinent foreseeability law.

> (a) The hindsight charge is appropriate in a medical malpractice case where the evidence raises an issue as to whether the negligence claim is premised on *later acquired knowledge* or information *not known or reasonably available* to the defendant physician at the time he provided the medical care.

(Citations and punctuation omitted; emphasis supplied.) *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 291-292 (3) (574 SE2d 326) (2002).

The Condras argue that the trial court's charge on hindsight was error because their negligence claim was based upon what Dr. Chappius knew at the time he prescribed Tegretol rather than later acquired knowledge or information not then known or reasonably available. Atlanta Orthopaedic presented evidence showing that aplastic anemia was known to be only a rare potential side effect of using Tegretol at the time Tegretol was prescribed. There also was evidence that Ms. Condra did not complain of any symptoms related to her medications upon seeing Dr. Chappius on July 7 after she finished taking the 30-day prescription for Tegretol that he had given her. Nor did she ask that her prescription for Tegretol be refilled at that time. Instead, two days later rather than calling Dr. Chappius, Ms. Condra contacted her gynecologist complaining of additional symptoms. Her gynecologist told her to discontinue Prempro, and her condition improved. Dr. Chappius otherwise testified that he had no additional contact with Ms. Condra after July 7 and did not hear further of her until July 28, the date of her diagnosis. Given the foregoing, the trial court did not err in charging the jury on hindsight. *Byrd*, supra, 258 Ga. App. at 291-292 (3).

(b) The Condras also contend that the trial court erred by including in its hindsight charge the sentence: "Negligence consists in not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remote and possible." By their appellate brief, the Condras acknowledge that *McNabb v. Landis*, 223 Ga. App. 894, 895 (1) (479 SE2d 194) (1996) instructs Georgia courts to include the foregoing sentence when charging juries on hindsight in cases of medical negligence. Relying on *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004), however, the Condras request that this Court overrule *McNabb* in such regard. *Munroe*, however, is here inapposite as announcing a rule of foreseeability in a negligent retention case. Moreover, the Condras offer no basis to reverse *McNabb*, and we find

none. See *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622, 631 (4) (610 SE2d 546) (2005) (approving complained-of sentence of pattern hindsight charge as not misleading, confusing, or in conflict with charge on standard of care).

Given the foregoing, we find no legal error in this case. There also was evidence showing that no act or omission by Dr. Chappius caused Ms. Condra's injuries, foreclosing an attack on the jury's verdict as not supported by any evidence. See OCGA § 31-9-6.1 (d) (1) (requiring in a medical malpractice action, among other things, evidence establishing that "the patient suffered an injury which was proximately caused by the surgical or diagnostic procedure."). Accordingly, the trial court did not err in entering its judgment on the jury's verdict for Atlanta Orthopaedic. *Horan*, supra, 197 Ga. App. at 153 (2).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 26, 2008 — 

*Pope & Howard, Geoffrey E. Pope, Doffermyre, Shields, Canfield, Knowles & Devine, Ralph I. Knowles, Jr.*, for appellants.

*Huff, Powell & Bailey, Daniel J. Huff, Camille N. Jarman*, for appellees.