NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



SUPREME COURT OF GEORGIA
Case No. S25C1409

February 3, 2026

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

GEORGIA BONE & JOINT SURGEONS, P.C. v. KEEL.

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur.*

Court of Appeals Case No. A25A0381

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

S25C1409. GEORGIA BONE & JOINT SURGEONS, P.C. v. KEEL.

BETHEL, Justice, concurring in the denial of certiorari.

I concur in the Court's denial of certiorari in this medical malpractice case. The Petitioner argues, among other things, that this Court's guidance is necessary on the issue of when a trial court is "required" to instruct the jury on how to evaluate testimony about a medical expert's personal practices as part of the jury's overall assessment of the applicable standard of care and any breach thereof. The trial court in this case rejected the Petitioner's requested charge on that point, and the Court of Appeals concluded that any error was harmless. See *Ga. Bone & Joint Surgeons v. Keel*, 376 Ga. App. 79, 83–84 (2025). The Petitioner maintains, as it did below, that the charge was "required" by this Court's decision in *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667 (2009). I write separately both to detail an inherent flaw in the Petitioner's reading of *Condra* and also to emphasize that trial courts ought not be afraid to give a "personal practices" instruction — or, for that matter, any

tailored instruction that breaks with the pattern jury instructions — where appropriate under the facts of a case.

In a medical malpractice case, as in other professional malpractice actions, expert testimony generally is necessary "to establish the parameters of acceptable professional conduct," that is, the standard of care. *DOT v. Brown*, 267 Ga. 6, 8 (1996) (quotation marks omitted). And the applicable standard of care in a given case is generally a question for the jury. See *Swint v. Alphonse*, 348 Ga. App. 199, 205 (2018). Cf. *Lau's Corp v. Haskins*, 261 Ga. 491, 493 (1991) (noting in premises-liability context that "[t]he particular standard of care to be applied and whether the owner breached that standard are usually issues to be decided by a jury").

*Condra* recognized the vital role an expert's credibility plays in the jury's assessment of the applicable standard of care, and an expert witness's testimony regarding his own personal practices can assist the jury in evaluating the expert's credibility. See 285 Ga. at 670 ("The jury is entitled to fully evaluate the credibility of the testifying expert, and the fact that an expert testifies that the

2

standard of care does not require what that expert personally does in a similar situation may be a critical piece of information for the jury's consideration." (quotation marks omitted; alteration adopted)). The trial court in that case had prohibited the plaintiffs from cross-examining the defendants' expert about his personal practices, a ruling that was consistent with our earlier decision in *Johnson v. Riverdale Anesthesia Assocs.*, 275 Ga. 240 (2002), which held that such testimony was categorically inadmissible. But *Condra* reversed course, looking to the text of then-recently enacted OCGA § 24-9-67.1 — now codified at OCGA § 24-7-702(c) — to conclude that "evidence regarding an expert witness'[s] personal practices, unless subject to exclusion on other evidentiary grounds, is admissible both as substantive evidence and to impeach the expert's opinion regarding the applicable standard of care." 285 Ga. at 669. Thus, *Condra*'s holding was a limited one.

The Petitioner here reads *Condra* to have broader implications, relying on *Condra*'s rejection of an argument that allowing personal-practices testimony was likely to confuse the jury and its musing

3

that any confusion "may be remedied through the use of careful jury instructions." Id. at 672. The Petitioner understands that brief discussion to incorporate an additional holding, namely, that trial courts are required to instruct the jury "that a mere difference in views between physicians does not by itself prove malpractice" when testimony about an expert's personal practice is introduced. Id. But "[s]peaking generally, the holding of a particular decision is limited to the reasoning that was necessary to that decision." *Walmart Stores East, LP v. Leverette*, 321 Ga. 854, 868 (2025). See also *State v. Wierson*, 321 Ga. 597, 605 (2025). As *Condra* addressed only the narrow question of the admissibility of personal-practices testimony in the medical malpractice context, its discussion about using jury instructions to head off potential juror confusion is not necessary to its result. Our reflection on jury instructions thus was not a holding. The Petitioner's alternate reading — that *Condra* requires such an instruction or suggests that refusing such an instruction is error — is disjointed from the narrow issue we actually addressed.

While the Petitioner is wrong to think that *Condra* mandates

such an instruction, that does not mean trial courts should not be open to deviating from the pattern jury instructions, where appropriate. The trial court's refusal of the Petitioner's requested charge in this case was premised on several considerations, including "that the requested charge was not a pattern jury instruction." *Ga. Bone & Joint Surgeons*, 376 Ga. App. at 83. And in reviewing claims of instructional error, the Court of Appeals has, at times, focused on whether a given charge or a refused proposed charge was part of the Suggested Pattern Jury Instructions. See, e.g., *Ward v. State*, 372 Ga. App. 383, 394 (2024) (reviewing whether trial court erred when instructing jury on admissibility of other-acts evidence and observing that "[t]he crucial question here is whether the language in question was and is consistent with Georgia's pattern jury instructions" (quotation marks omitted)); *Penix v. State*, 367 Ga. App. 765, 768 (2023) (rejecting claim that trial court erred by refusing requested jury charge because, among other reasons, "[t]his charge is not included in the Georgia Suggested Pattern Jury Instructions"); *Dorsey v. State*, 331 Ga. App. 486, 493 (2015)

(addressing claim of ineffective assistance for requesting a jury charge on prior consistent statements and noting that "the actual charge requested in this case did not follow the pattern charge of the time"). But this line of reasoning is disconnected from this Court's precedent, which requires only that a jury charge be "adjusted to the evidence and embod[y] a correct, applicable, and complete statement of law." *Morris v. State*, 308 Ga. 520, 529 (2020) (quotation marks omitted). And whether a challenged charge is consistent (or inconsistent) with the suggested pattern charges sheds no light on whether the charge is a correct and complete statement of law.

This is so because pattern jury instructions are not the law — they are not written by the General Assembly — nor are they an authoritative interpretation of the law — this Court neither reviews nor approves them.[1] Rather, they represent the commendable efforts

---

[1] The Prefaces to both the Civil and Criminal Suggested Pattern Jury Instructions for 2025 emphasize these points and go on to identify "two basic problems with relying on any standard, or pattern, instruction," namely that "[n]o suggested charges can cover every situation, and the task will ever belong to the trial judge to 'tailor' or adapt the charge material to the case on trial" and that "new, possibly unanticipated facts may render a standard charge — even an otherwise correct one — inappropriate in certain circumstances."

of the Council of Superior Court Judges of Georgia to establish best practices in charging juries, consistent with the *Council's* understanding of the law and precedent that binds Georgia's trial courts. Indeed, use of a pattern charge does not necessarily preclude a finding of error. See, e.g., *Reese v. State*, 314 Ga. 871, 880–82 (2022) (trial court erred by refusing to give modified pattern charge where pattern charge, as written, was not adjusted to the evidence of the case). And this Court has concluded on more than one occasion that a pattern charge was simply wrong. See, e.g., *Smith v. Finch*, 285 Ga. 709, 710 (2009) (concluding that pattern instruction on hindsight was erroneous); *Tolbert v. Duckworth*, 262 Ga. 622 (1992) (holding that pattern charge on accident was "unnecessary, misleading, and confusing" and prohibiting its future use). In short, whether a requested jury charge is a pattern charge or a deviation therefrom cannot alone be a legitimate reason to grant or deny an otherwise appropriate charge.[2]

---

[2] The trial court here had other bones to pick with the proposed instruction, including that it was "'very hard to follow,' was repetitive of the

In the preparation of jury instructions, the suggested pattern instructions are most often a good place to start, though they may not be the end of the matter.[3] This Court has observed that "[a] trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence." *Jones v. Sperau*, 275 Ga. 213, 214 (2002). So charging the jury with the requisite care and skill may necessitate modifying a pattern charge or even fashioning a specially tailored charge to better align with the evidence or legal issues in the case. See *Reese*, 314 Ga. at 881 ("[I]t is black-letter law that jury instructions *must* be adjusted to the evidence in the particular case before the jury." (emphasis added)). And trial courts should not hesitate to do so. Here, for example, the trial court might have permissibly instructed the jury about whether and how an expert's testimony about his personal practices was relevant to

---

standard of care charge, and, ultimately, [was] unnecessary." *Ga. Bone & Joint Surgeons*, 376 Ga. App. at 83. Those objections are, at least in my estimation, well taken.

[3] As the Court of Appeals for the Seventh Circuit has remarked, "pattern instructions are helpful resources, not holy writ." *United States v. Edwards*, 869 F3d 490, 500 (7th Cir. 2017).

determining the applicable standard of care and whether that standard was met or breached in this case. Of course, that is not to say the trial court *had* to give such an instruction, only that it could be warranted in similar circumstances and that trial judges should consider those circumstances accordingly.

I am authorized to state that Justice McMillian and Justice Pinson join in this concurral.